Sylvester COLE, Claimant (Plaintiff), Respondent,

v.

BEST MOTOR LINES, Employer, and Transport Insurance Company, Insurer, (Defendants) Appellants.

No. 29735.

St. Louis Court of Appeals.

Missouri.

June 4, 1957.

Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, J. C. Jaeckel, St. Louis, for appellants.

Max M. Librach, St. Louis, for respondent.

HOUSER, Commissioner.

In a workmen's compensation proceeding the referee and industrial commission found in favor of Sylvester Cole, employee, and against Best Motor Lines, employer, and Transport Insurance Company, insurer, and awarded him compensation for permanent partial disability of 10% of employee's body as a whole. From a circuit court judgment affirming the commission's award employer and insurer have appealed.

The issue was the extent of disability, if any, sustained by claimant as a result of an injury arising out of and in the course of his employment.

On December 30, 1954 claimant, a maintenance man whose duties consisted of gassing, greasing and repairing the lights on trucks, crawled underneath a company tractor to drain the oil from the crank case. While removing the pan of oil and while coming out from underneath the tractor a projecting petcock on a gas tank struck claimant's left side. He lost only one shift of work during the week following his injury. For two months claimant was under the care of a company doctor without loss of time from work. During this period claimant performed no duties other than the gassing of trucks, claiming inability to perform his full duties. On February 2, 1955 he was discharged for being twenty minutes late to work. Claimant testified that two or three days later he drove his automobile to Baton Rouge, Louisiana where he remained for three months, during which period he was unable to work; that he was under the care of a Dr. Smith in Baton Rouge for two months, taking heat treatments and pills. He came back to St. Louis to apply for unemployment compensation and stated in a written application that he was available for "all kinds of work." His application was approved and he drew benefits until he was employed by General Tire Company in September, 1955. He worked for this concern for four months, changing tires on tractor trailers. Laid off because of a reduction in force he applied for unemployment compensation, again stating that he was available for "all kinds of work." After leaving General Tire Company he applied for work as a tire changer at Goetz Tire Company, Owl Truck Lines, a filling station, Ben Gutman Truck Lines and as a coal truck driver at City Ice & Fuel Company. At the time of the hearing, which commenced on February 6, 1956, claimant was receiving unemployment compensation payments under his second application.

Claimant testified that there was a bruise and that a day or two after December 30, 1954 a knot appeared at the point of injury; that the knot was "swollen pretty bad" and sore; that the knot has enlarged; that his side gives him trouble; that if he takes a long walk or does any hard work "it hurts and pains all the time;" that pressure applied by the hands causes pain; that he wears a belt or girdle which fits tightly without which he is unable to work; that as long as the girdle holds him together he feels better; that he can bend to his right side in a normal manner but that he cannot bend as well to his left side. To the examining doctors he complained of pain and soreness in the lower left chest, aggravated by coughing, sneezing and lying on that side; inability to lie on his left side; that once pain develops following increased activity it may persist all night; tenderness on deep breathing, exertion and pressure; some pain in the upper lumbar region, aggravated by back movements, and discomfort when he attempts to lift objects or coughs or after taking a long walk.

Three doctors testified. Dr. Wennerman, to whom claimant was sent by his attorney,

examined claimant on April 25 and May 18, 1955 and again at the hearing. He testified that he found a thickening of the lower two or three ribs in the axillary line, which may have resulted from a fracture of some of the lower rib cartilage. The mass, the size of a marble, is at the tip of the cartilage of the twelfth rib, left side. The area was quite tender and was causing pain. There was some tenderness over the lumbar vertebrae. Movements of the back could be carried out but on bending to the left there was a complaint of pain in the rib area. The swelling was definitely larger than in May. There is a possibility that a tumor of the cartilage has developed, since the knot has persisted more than a year, and is larger and still tender. Such a condition is very often malignant. His advice was to excise the mass and examine sections to determine the exact condition. He estimated that claimant has a disability of 10% loss of a man and that the condition is permanent.

Dr. Funsch, a witness for employer and insurer, found a visible and palpable thickening in the lower left side of the chest on the cartilage to the last rib, size 1 inch by 1½ inches. The area was adherent to the rib and not movable. There was no complaint of tenderness upon the application of pressure to the thickening nor did the movements of the chest bring any complaint of pain or tenderness. He had claimant expand his chest fully, then bring his arms above shoulder height to the vertical position. Neither of these movements produced any noticeable difficulty or complaint but were done in a normal manner. An X-ray of the chest was negative for bone injury. The thickening was the same size at the time of the hearing as on June 29, 1955 when he first examined claimant. The condition found is common. An injury to a cartilage sufficient to cause a thickening is very painful but what damage was done has healed. While there is some thickening of the cartilage and deformity, which is permanent, it is producing no impairment of function—no disability in this sense.

Dr. McCarroll, appointed by the referee to make an impartial examination, reported in writing that he found complaints of tenderness to pressure localized in an area two inches in diameter centered to the anterior tip of the eleventh rib and complaints of the left lower rib margin, anteriorly, on lateral bending to the left. He found "no evidence of serious abnormality and no evidence of bone change which could be attributed to a single injury. He undoubtedly sustained a contusion over the left lower rib structures * * * which could have resulted in some secondary scarring in this region. In the presence of such a secondary scarring some soreness could persist indefinitely. This type of discomfort, however, is usually not serious or disabling in character and nothing is indicated in the way of treatment. * * * On the basis of this patient's present findings his disability would, in my opinion, be no greater than 10% of the individual as a whole." Thereafter, called to testify, Dr. McCarroll stated that the estimate of disability in his written report was based upon the possibility of the continuance of discomfort as a result of residual scarring when tension is exerted or pressure applied at that point to the abdominal muscles in certain types of work, as in lifting or twisting to one side, pulling a wrench, etc. and the possibility that the soreness and discomfort could be serious enough to interfere somewhat with more strenuous activities, but that he had no way of knowing whether there was a certainty or reasonable certainty that the condition would be permanent. He emphasized that he did not undertake to say that there was actually a 10% disability or make an exact statement as to the amount of disability but thought that it "could range up to the level of 10%;" that on the percentage of disability, while "it would be within that realm" his opinion would necessarily have to be somewhat

speculative; that there were no objective findings, but only subjective findings, upon which to base a finding of permanent partial disability. He testified that he had not been informed as to the type of work claimant had done or for which he had applied since the date of injury and that he did not take those matters into consideration in forming his written opinion as to disability; that "if any individual has done that type of heavy work and has been able to continue at it, then the disability would certainly be relatively milder in degree in my estimation, but to what extent I would have no way of knowing."

Urging that the circuit court erred in affirming the award of the industrial commission appellants claim that the award should have been reversed outright; that the commission reasonably could not have reached its conclusion on the whole record and that its award is in conflict with the overwhelming weight of the evidence; that claimant's own testimony affords conclusive proof that he did not sustain a permanent partial disability; that his activities since the date of injury, the performance of strenuous work, changing tires on trucks and trailers, his applications for heavy, laborious work involving great physical exertions and his applications for and receipt of unemployment compensation benefits on two occasions on the basis that he was available for all types of work, have been wholly inconsistent and incompatible with the existence of any disability. It is further urged that the testimony of Dr. Funsch that no disability existed and that of Dr. McCarroll that he had no way of knowing whether any disability would exist or whether the tenderness complained of would be permanent is opposed to any such conclusion. Appellants, conceding that the written report of Dr. McCarroll indicated the existence of some disability, claim that the indefinite rating contained in his written report was rendered valueless when read in the light of his testimony at the hearing that in making the report he did not know about the type of work claimant had performed or applied for and did not know about claimant's applications for and receipt of unemployment compensation benefits; that those matters were not taken into consideration when the report was prepared; that there were no objective findings of injury, and that giving these matters proper consideration there might not be any disability. The testimony of Dr. McCarroll is further indicted on the basis that it was based on "possibilities" and was speculative in character. Appellants undertake to negative the testimony of Dr. Wennerman. They argue that the circuit court was not required and that this court is not obliged to accept and believe Dr. Wennerman's testimony because it is not in accord with the realities of the situation as disclosed by claimant's own testimony concerning the strenuous character of the work which he performed for the tire company, the applications, etc. and the aforesaid testimony of Drs. Funsch and McCarroll. Finally, appellants state that claimant's own testimony is in irreconcilable conflict with whatever evidence the record contains with respect to the existence of disability, thus depriving claimant of the benefit of such evidence.

We cannot substitute our own judgment for that of the industrial commission. Our function is to determine whether the commission reasonably could have made its findings and reached its result upon consideration of all the evidence before it. We will not disturb a finding of the commission based upon the acceptance by it of one of two conflicting medical theories unless the evidence supporting the theory was not substantial or that the finding was against the overwhelming weight of the evidence. Tebeau v. Baden Equipment and Const. Co., Mo.App., 295 S.W.2d 184; Teel v. F. Burkart Mfg. Co., Mo.App., 271 S.W.2d 259; Brown v. Griesedieck Western Brewing Co. of Mo., Mo.App., 250 S.W.2d 803.

Tersely summarizing the medical evidence, Dr. Wennerman testified that there was a 10% permanent disability; Dr. Funsch that there was no disability, and Dr. McCarroll was inconclusive on the question. It was the province of the commission to resolve these conflicts in the evidence. The testimony of Dr. Wennerman alone was amply sufficient to sustain the award of the commission. While the commission was not required to accept this doctor's testimony neither was it obliged to reject it on the ground assigned by appellants. The commission had the right to accept part of the testimony of Dr. Wennerman and to reject part of it, giving probative value to only that part "which has the ring of truth in it." Sams v. Hayes Adhesive Co., Mo.App., 260 S.W. 2d 815, loc.cit. 819. Apparently the commission accepted Dr. Wennerman's testimony as to the extent and permanence of the disability but disagreed with his suggestion that an exploratory surgical operation be performed to ascertain the precise nature of the thickening. This the commission, as the fact finding body, clearly had the right to do.

Claimant's testimony that he changed tires on tractors, made applications stating that he was able to do all kinds of work, etc. was not so utterly destructive of his claim as to disentitle him to the benefit of Dr. Wennerman's testimony, within the rule referred to in Harding v. Kansas City Public Service Co., Mo.App., 188 S.W.2d 60, loc.cit. 69, that evidence contrary to physical facts and common experience is not entitled to any weight. The only testimony with reference to the performance of hard work was that beginning in September, 1955 and continuing for a period of four months claimant worked for the General Tire Company "changing tires" on tractor trailers. There was no evidence as to the volume of work he performed for that employer, the number of hours worked each day, the continuity of the work, the speed with which it was necessary to operate, whether or not tools and appliances were provided to reduce or facilitate the hard labor required, the amount of lifting necessary or any specific evidence that the work was particularly laborious or strenuous. Appellants state that "it is common knowledge that work of that character is very strenuous" but there is no evidence that a person with a 10% disability as a man could not perform this type of work and we cannot take judicial notice of that fact. While a man with a 10% disability would not be able to perform this type of work with the efficiency and capability of a normal person it does not follow that he would be wholly incapacitated from changing tires on tractors and trailers or that he would be unable to hold an employment of this nature for four months. Claimant's testimony in this regard is not contrary to physical facts and common experience. As stated by respondent: "A man may have a permanent partial disability and still be able to work."

It follows that the judgment of the circuit court should be affirmed, and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

RUDDY, P. J., and MATTHES and ANDERSON, JJ., concur.