Rachel June SLIDER, Employee,
Respondent,

v.

BROWN SHOE COMPANY, a Corporation,
Employer, Appellant.

No. 7593.

Springfield Court of Appeals.

Missouri.

Dec. 13, 1957.

Renderer, Nolde & Kleinschmidt, St. Louis, for appellant.

Ford & Ford, Kennett, for respondent.

STONE, Presiding Judge.

In this proceeding under the Missouri Workmen's Compensation Law, Brown Shoe Company (the employer) appeals from the judgment of the circuit court affirming the final award of the Industrial Commission of Missouri dated January 12, 1956, which awarded to Rachel June Slider (the claimant) compensation in the aggregate sum of $1,806.84 for temporary total disability from March 22, 1954 (the date of accident), to September 1, 1955, and directed payment by the employer of $747.59 for necessary medical aid not furnished by it. On this appeal, the employer frankly concedes that the record "reasonably supports the findings of the Industrial Commission that (claimant) sustained an accidental injury arising out of and in the course of her employment * * on March 22, 1954, and that (claimant) was unable to work from the date of accident until September 1, 1955," and the primary and determinative issue is "whether the evidence reasonably established a causal connection between the accident and the disability."

We emphasize at the outset that, although we are authorized to determine whether, upon the entire record, the Industrial Commission reasonably could have made the findings and award under consideration, this does not mean that we may substitute our judgment on the evidence for that of the Commission. On the contrary, we may set aside the findings and award of the Commission only if they are clearly contrary to the overwhelming weight of the evidence, when the evidence in its entirety, including all legitimate inferences reasonably deducible therefrom, is viewed in the light most favorable to such findings and award. Hance v. Johnson, Stephens & Shinkle Shoe Co., Mo.App., 306 S.W.2d 80, 83(5-7), and cases there cited. Our statement of facts gives appropriate and required recognition to that guiding principle. Davis v. McKinney, Mo.App., 303 S.W.2d 189, 190.

About 7:45 A.M. on Monday, March 22, 1954, while working in a standing position at her regular job of spraying shoes in the employer's plant at Caruthersville, Missouri, claimant (then twenty-nine years of age) slipped and started to fall backward. By grasping with her right hand a vertical bar bolted to the machine in front of her, claimant avoided falling to the floor; but, "when I (claimant) grabbed this bar it threw me around and my (right) side hit and threw my back in the case," a shoulder-high steel rack holding thirty-six pairs of shoes. She had immediate pain in her back and hips, within a few minutes reported the accident, and shortly thereafter was driven to her home by a fellow-employee. That same afternoon, claimant "got to hurting so bad" with severe pain in her back and legs that a neighbor conveyed her to the office of Dr. W. M. Lamb, who promptly administered "a double shot or hypo and took (claimant) to the hospital" at Hayti, Missouri.

Claimant said that her right hip, "about halfway to the knee on the right side," was bruised as a result of the accident. Her husband also saw the hip bruise, and Dr. Lamb remembered that claimant "had ecchymosis on the right hip and the right leg but (it) did not amount to anything." While in the hospital at Hayti from March 22 to 28, 1954, claimant complained of severe back pain radiating into her right leg, pain in her neck and right arm, and "disuse or tingling in the right arm." X-ray examination was negative, but physical examination revealed acute muscle spasm of the back muscles and neck muscles. Having "used about everything we could think of to try to alleviate the pain" but being unable to "get any relief for her" or to "explain the reason for disuse or tingling in the right arm," Dr. Lamb arranged for claimant to be transported by ambulance to the Missouri Pacific Hospital in St. Louis, where she was examined by Dr. Royal A. Weir, the employer's medical director, and Dr. George L. Hawkins, Jr., a neuro-

surgeon. Dr. Weir's examination of claimant's back "revealed tenderness on pressure over the lumbosacral region" but "no apparent (muscle) spasm." Neither Dr. Weir nor Dr. Hawkins made "any objective findings of pathology" and both thought that (as stated in Dr. Weir's language) she "had a great amount of functional overlay which was in a great degree responsible for her complaints." By functional overlay or functional disability, the witnesses meant disability "which is a result of mental processes but not of injury to the nervous system"—disability resulting from an unstable nervous system or "psychic response such as hysteria" and manifesting itself in "complaints or findings that are not explainable on any organic basis."

According to Dr. Weir, claimant was "symptom free" when discharged from Missouri Pacific Hospital on April 2, 1954. However, claimant said that "at the time I was dismissed I was in pain and could not straighten up," and that, when she reached Caruthersville on the return trip by bus, "the bus driver * * found me a taxi to go home because I was not able to go home." Having received no report from Drs. Weir and Hawkins and having concluded that they "apparently had not relieved (claimant) from her complaints," Dr. Lamb of Caruthersville referred claimant to Dr. Bland Cannon, a neurosurgeon, and Dr. Marcus Stewart, "a back specialist," at Memphis. Although neither Dr. Cannon nor Dr. Stewart testified in the instant case, we learn from claimant that, while confined in the Baptist Hospital at Memphis for about two and one-half weeks during April, 1954, she was in traction for ten days, was given heat therapy, and was fitted with a back brace which she subsequently wore for about four and one-half months. Claimant's description of her condition upon her return from Memphis was that "I could not still get around very well, walk, and the doctor told me to do walking but not to do work, stooping or squatting down or anything like that, and I still suffered with my back." Claimant

thereafter "improved under conservative treatment and therapy"; but, the improvement "was very short-lived" and in July or August, 1954, she was sent to Drs. Cannon and Stewart again. Claimant consulted these Memphis specialists three or four times during 1954 (on dates not fixed in the record) and remained under the constant medical care of Dr. Lamb through 1954 and 1955.

Apparently pursuant to arrangement by the employer, claimant was confined in Barnes Hospital at St. Louis from August 3 to September 1, 1955, where she was examined by Dr. E. H. Parsons, a neuropsychiatrist, and by several consultants. None of these examiners found any evidence of trauma or injury, and all agreed that (as Dr. Parsons stated it) claimant was "a very insecure, anxious young woman" with a crippled child, severe emotional burdens, and "real but non-traumatic problems," whose "variable and fluctuating series of subjective complaints" had a "functional background," i. e., resulted from "a severe anxiety reaction without any organic physical change." In short, claimant's difficulties were said to have been psychological and not traumatic, although Dr. Parsons emphasized that "this girl (claimant) is not malingering." When discharged from Barnes Hospital on September 1, 1955, claimant was reported by Dr. Parsons to have been in excellent condition and able to return to her regular work; and, as we have noted, compensation was awarded for temporary total disability to that date.

Testimony was taken at three hearings, to-wit, before the referee on November 18, 1954, and January 25, 1955, and before the Industrial Commission on December 13, 1955. At the first hearing, claimant said that "there is a continuous pain in my back at all times, sometimes it is worse than other times," and that "at times I think I am improved, at times I think I am not because my back bothers me—about the time I think I am feeling all right, my back gets me back down"; and, at the last hearing, claim-

ant's description of her then condition was couched in similar language. We note also claimant's positive testimony that "I chopped and picked cotton every fall and every summer until I was married and even after I was married," and that, prior to the accident on March 22, 1954, she had experienced no difficulty with her back.

The only medical witness called by claimant was Dr. Lamb of Caruthersville, who testified on January 25, 1955. On direct examination, Dr. Lamb expressed the opinion that claimant had thirty per cent permanent partial disability of the body as a whole due to spondylolisthesis, defined by the medical witnesses as the slippage of one vertebra on the vertebra below it (usually of the fifth lumbar on the first sacral), which is frequently the result of a congenital abnormality but may be caused by trauma. On cross-examination, Dr. Lamb readily conceded that this was only a "possible" and not a "definite" or "final" diagnosis, frankly stated that spondylolisthesis could be diagnosed only by oblique x-ray views or upon surgery, and finally admitted that he could not make a diagnosis of spondylolisthesis from what he had found and had seen personally. The employer's medical witnesses testified positively that claimant had no spondylolisthesis.

 However, Dr. Lamb made a *definite* diagnosis of "compression of the dorsal nerve roots coming out of the fourth and fifth lumbar vertebrae." It is true that, as employer's able counsel argue, such diagnosis by Dr. Lamb would not have been competent or admissible, if it had been based, in whole or in part, upon information obtained from others who did not testify [Baumhoer v. McLaughlin, Mo.App., 205 S.W.2d 274, 278–280(3); annotation 175 A.L.R. 274], and that one particular answer by Dr. Lamb, standing alone, would indicate that his opinion was "partially based" on "support" supplied by others. But, the testimony of any medical witness should be appraised in its entirety, not on the basis of an isolated statement or state-

ments. Cheek v. Durasteel Co., Mo.App., 209 S.W.2d 548, 554(4). See also Walker v. St. Louis Public Service Co., 362 Mo. 648, 243 S.W.2d 92, 96–97(2). So considered, the inescapable import of Dr. Lamb's testimony is that his diagnosis of nerve root compression in the lumbar area did not depend upon information obtained from others. For example, we find that, *after* the answer upon which employer relies, Dr. Lamb emphatically stated that "the nerve root has to have pressure to have the kind of muscle spasm and pain she had— there is no getting around it," pointedly emphasized that "I make up my own mind— a man did not make up my mind" for me, and bluntly refused to speculate with employer's counsel as to "what would be the cause of (claimant's) condition" if she did not have nerve root compression in the lumbar area, because "I say she does have" such compression.

 We have not overlooked the fact that there was no *specific* inquiry of Dr. Lamb, and thus no *specific* statement by him, as to whether claimant's accident had caused the nerve root compression in the lumbar area. But, although Dr. Lamb stated that claimant's complaints concerning her right arm resulted from a functional (i. e., psychic) condition and that he had made "no final analysis" of her neck condition, cross-examination of the doctor elicited a positive opinion that not all of claimant's complaints were on a functional basis; and, again viewing the testimony of this medical witness in its entirety, we cannot say that it was without probative value on the issue of causal connection between claimant's accident and disability. Thus believing, it becomes unnecessary for us to undertake the interesting but unrewarding task of determining whether causal relationship could have been found without expert medical testimony.

 In our view of the case, no useful purpose would be served by detailing additional facts or by demonstrating the various inferences which might have been

drawn therefrom. Certainly, claimant's medical testimony is not entirely satisfying. Cf. Cardwell v. White Baking Co., Mo., 299 S.W.2d 452, 454; Schaefer v. Rechter, Mo., 290 S.W.2d 118, 124. But, as we have noted, the scope of our review is circumscribed, and it is immaterial what our findings might have been if we had heard the evidence originally. Blair v. Armour & Co., Mo. App., 306 S.W.2d 84, 89(6). Numerous Missouri cases manifest the significance which has been accorded to the testimony of claimants and lay witnesses, particularly when supported by some medical evidence. E. g., Monical v. Armour & Co., Mo., 307 S.W.2d 389; Hall v. Spot Martin, Mo., 304 S.W.2d 844, 848–849, 852; Conley v. Meyers, Mo., 304 S.W.2d 9, 15–16(7); Garrison v. Campbell "66" Express, Mo.App., 297 S.W.2d 22, 29(7). See also Pettyjohn v. Interstate Heating & Plumbing Co., Mo., 161 S.W.2d 248, 252(9, 10); Johnson v. St. Louis Public Service Co., Mo.App., 256 S. W.2d 308, 314. And, in the instant case, we are constrained to conclude that the testimony of claimant, coupled with that of Dr. Lamb, constituted competent and substantial evidence from which the Industrial Commission, as trier of the facts, reasonably might have found (as it did) that claimant's back was injured by the accident of March 22, 1954, and that there was causal connection between said accident and claimant's disability, the existence and duration of which are conceded by employer. Christ v. St. Louis Malleable Casting Co., Mo. App., 213 S.W.2d 636, 640–641; Hammett v. Nooter Corp., Mo.App., 264 S.W.2d 915, 918–919(3).

■ The employer also contends that, in any event, the Industrial Commission erred in awarding the aggregate sum of $747.59 for "necessary medical aid not furnished by employer," including the bills of Dr. Lamb of Caruthersville, Drs. Cannon and Stewart of Memphis, and the hospitals at Hayti and Memphis. Other medical and hospital expenses already have been paid by the employer. It was stipulated that the medical and hospital bills included in the aforesaid award were reasonable in amount, but their allowance is assailed on the ground that claimant "voluntarily selected her own physician and was not *refused* medical aid by employer." The accident under consideration was reported to the employer within a few minutes; but, as claimant testified, no medical aid was furnished or tendered. Although not directed to Dr. Lamb by the employer, claimant consulted him on the day of accident (so she said) because she knew that "Dr. Lamb was a company doctor"; and, in accordance with the employer's *general* instructions, Dr. Lamb or his partner, Dr. C. F. Cain, contacted "a doctor in St. Louis" and "made arrangements to move (claimant) to St. Louis" on March 28, 1954. As recited in our factual resume, Dr. Weir (the employer's medical director) thereafter, to-wit, on April 2, 1954, discharged claimant from Missouri Pacific Hospital as "symptom free" and able to return to work; but, having received no report from Dr. Weir and being convinced that claimant needed further medical attention and care, Dr. Lamb referred claimant to the Memphis specialists.

Under Section 287.140, RSMo 1949, V.A. M.S. (as amended), an employer has the privilege in the first instance of designating and selecting the physician and hospital to render the care required by the statute. However, if an employer, with notice that an employee has sustained a compensable accident [Aldridge v. Reavis, Mo.App., 88 S.W.2d 265, 267(4)], *refuses or neglects* to provide or tender necessary medical or hospital treatment, the injured employee need not lie helpless or in pain; but, in such circumstances, the employee may procure necessary treatment (within the statutory limitations) and have an award against the employer for the reasonable cost thereof. Finn v. Harrison, Mo.App., 255 S.W.2d 93, 98(2); Schutz v. Great American Ins. Co., 231 Mo.App. 640, 103 S.W.2d 904, 910(6). See also Klasing v. Fred Schmitt Contracting Co., 335 Mo. 721, 732, 73 S.W.2d 1011, 1016. In the instant case, there was no re-

jection by claimant of medical or hospital aid proffered by the employer [contrast Kopolow v. Zavodnick, Mo.App., 177 S.W. 2d 647, 653(5); Moorman v. Central Theatres Corp., Mo.App., 98 S.W.2d 987, 992 (7)]; and, on the record before us, we are persuaded that the Industrial Commission properly might have found that the medical and hospital bills, included in the award, reflected the reasonable cost of necessary aid which the employer had *neglected* to furnish or tender. Hammett v. Nooter Corp., supra, 264 S.W.2d loc. cit. 919(6, 7); Evans v. Chevrolet Motor Co., 232 Mo.App. 927, 105 S.W.2d 1081, 1084–1085(7, 8).

The judgment of the circuit court affirming the final award of the Industrial Commission is affirmed.

McDOWELL and RUARK, JJ., concur.