Vernon Howard DAVIS, Employee,
Respondent,

v.

DAY–BRITE LIGHTING, INCORPORATED,
Employer, Appellant.

No. 31254.

St. Louis Court of Appeals.

Missouri.

March 19, 1963.

Renderer & Nolde, St. Louis, for appellant.

Eugene M. Munger, St. Louis, for respondent.

J. MORGAN DONELSON, Special Judge.

This is a Workmen's Compensation case where the employer, Day-Brite Lighting, Incorporated, appeals from the Circuit Court judgment affirming an award of the Industrial Commission in favor of the employee, Vernon Howard Davis.

Before the Referee it was admitted that Vernon Howard Davis on February 8, 1960, the date of the alleged accident and injury, was an employee of the Day-Brite Lighting, Incorporated; that both the employee and employer were subject to the provisions of the Missouri Workmen's Compensation

Law; that the employee's claim was filed within the time prescribed by law; and that the employee's average weekly wage was in excess of $67.50.

The employee, at the time of hearing before the Referee in December, 1960, was thirty-two years old. He had been an employee of Day-Brite for approximately nine or ten years. At the time of the alleged accident and injury he was employed as a helper on a blanking machine or punch press, and worked the three-to-eleven shift. When necessary he turned sheets of metal which he helped insert or feed into the press. These sheets of metal were approximately 49" x 60", 16 or 20 gauge, and each weighed 37 or 47 pounds. He put oil on some of the sheets with a roller to keep from "shearing the die". The sheets were turned over to apply the oil. Some of the sheets were curled on one end, and it was necessary to turn them before they were inserted in the press. After the sheets were oiled and turned, Everett Sills, a co-worker who worked on the same machine, helped him put them in the press. The turning and oiling of these metal sheets were the duties of claimant employee. This was his regular job, and he had been doing it for quite some time. He stated that oil from the roller used on the sheets could and sometimes did drip off the side or edges of the sheets to the floor, and dryers would be put down to correct the condition.

Davis stated the accident and injury occurred as he was turning a sheet of metal. He had it up about his head, his foot slipped in some oil on the floor, and he hurt his back. He told co-worker Sills at the time of the injury, "I hurt my back". Claude Williams, his foreman, was called over and he asked Davis what happened. Davis testified he told him, "I pulled something in my back. I said there was a sharp pain and I didn't know what happened—I still don't know because I'm not a doctor—and he said, you probably just pulled a muscle." There was no eyewitness to the occurrence, as co-worker Sills had just left the machine for three to five minutes. When Sills came back claimant employee was sitting down holding his head in one hand and back in the other. This happened about 9:30 or 10:00 o'clock at night. Claimant testified that he continued after a time to work while sitting on a stool. He helped to put the remainder of ten to twelve sheets of metal through the press before it was time to quit work. These remaining sheets of metal were not turned or oiled. He stated that he continued to have very sharp pains in the low back and could just barely walk. He drove home that night and his wife put a heat pad on his back. He further stated that he could not get out of bed for the next six days without assistance. The next day after the accident he visited a Dr. Guerra, a physician of his own choice, for treatment. The following Monday he went to the plant of employer, talked to Jerry Borina, the company nurse, who sent him to Dr. Louis A. Reuter, the employer's doctor.

Dr. Reuter first examined claimant on February 16, 1960. After the history was taken and examination completed, he determined that claimant had sustained a strain of the soft tissues of the low back with restriction of motion. From X-rays the doctor made a further finding that a slight spondylolisthesis of the fifth lumbar vertebra existed, and in his opinion it was congenital in nature. A series of diathermy treatments were given to claimant. When the muscle restrictions did not clear up, he advised manipulation of the back under general anesthetic. On March 18, claimant was taken to St. John's Hospital, and his back was manipulated as suggested. He was seen two or three times a week thereafter until the muscle guard and spasticity gradually improved. He was released on September 6, 1960. It was the doctor's opinion that there was no aggravation of the previous congenital spondylolisthesis condition.

Dr. Lee T. Ford, M. D., testified that he examined the claimant employee on March 22, 1960, at the request of claimant's attor-

ney, for the purpose of evaluation, recommendation of treatment, and a report. The report was made and introduced in evidence before the Referee. The history given to the doctor by claimant was that he injured his back at work on the date stated while turning a piece of sheet metal over. He stated that he pulled something out of place in his lower back, and this caused him to fall to his knee. He was able to finish working his shift, but the next day he could hardly get out of bed. He detailed to him that he had seen Dr. Guerra, who gave him an injection of medicine in his arm. He called the company nurse and was referred to the company doctor. He remained off work until Monday, and then returned to work. He was given daily heat treatments.

The matter of the hospitalization under a general anesthetic for back manipulation was related to Dr. Ford. Claimant complained of continued pain in the low back which now seemed to be generalized and involved also his lower limbs, his feet, his arms, and all over his body. He said the pain in his left hip feels like a knife. Coughing and sneezing aggravate the pain. It hurt him to move. There is pain present both day and night. He was taking pain pills but had not worn a back support to that time. From his examination the doctor further found that claimant had moderate limitation of the neck motions, complaining of pain when he moved his head in all directions. He complained of pain when traction was applied to his head. His neck was tender, diffusely. He found he had a full range of motions in the shoulder, but they cause pain in the neck and lumbar area. The back motions were limited moderately in all directions. He found no neurological deficit in either lower extremity; his ankle and knee jerks were equal. Straight leg raising was painful at ninety degrees on the right and eighty degrees on the left side. There was pain at forty-five degrees on either side when the knee and hip were flexed. He found the entire lumbar spine was tender, but the lower extremities were not tender. The right lower extremity is one-fourth inch shorter than the left. X-rays of lumbo-sacral spine revealed a spondylolisthesis of the fifth lumbar of the first degree. The vertebra had slipped or displaced forward less than one-third of diameter of the vertebra. The lumbosacral disc space was narrowed slightly.

The doctor was of the opinion that the symptoms of back pain and sacroiliac pain had resulted from aggravation of a pre-existing spondylolisthesis of the fifth lumbar vertebra accompanied by functional overlay. The prescribed treatment was a lumbosacral belt as a back support and two medications, one for pain and one to help nervousness and to relax muscles. Dr. Ford saw claimant again on March 31, 1960, and found he had obtained and was wearing the belt prescribed, which helped, but he still had back pain, pain in the left hip, with occasional numbness and tingling of the left foot. He was of the opinion that claimant could do bending, lifting, twisting, as the normal ordinary man can do, but he would have pain when he did such things. He was further of the opinion that he would have some permanent disability. Dr. Ford then referred claimant to Dr. Robert Lam, a neuropsychiatrist, for evaluation and recommendation for treatment.

The medical report of Dr. Robert Lam was introduced before the Referee, but upon objection of employer it was withdrawn from the record and consideration. Dr. Lam was to be called as a witness, but this was never done. Claimant testified that he was not treated by Dr. Lam.

Dr. H. R. McCarroll examined claimant on July 25, 1960, and his report was received in evidence by the Referee without objection. The history given Dr. McCarroll was very similar to that given to Dr. Ford. Claimant's complaints were much the same. The doctor found tenderness over the entire lumbar spine and the body of the sacrum. Claimant's back motions were normal, but he complained of intense pain and marked resistance is felt with any attempted passive motion. The doctor also found a minimal

displacement in the lumbo-sacral area suggestive of a spondylolisthesis, which in his opinion could explain claimant's pain. Conservative type of treatment was suggested, if claimant could do some form of work; otherwise the alternative was a lumbosacral fusion.

On October 7, 1960, claimant was again examined by Dr. Ford. On the objection of the employer that claimant had not complied with Section 287.210 RSMo 1959, V.A.M.S. requiring a complete medical report be furnished to employer, the report of Dr. Ford dated October 11, 1960 was not admitted by the Referee. However, over the objection of employer the doctor testified that this claimant had twenty to twenty-five percent permanent disability as a whole. He further stated that claimant's condition, when examined in October, was essentially the same as it was when he examined him in March, except that claimant had developed a hypesthesis involving the left leg and foot, which he attributed to a functional overlay. The commission in its finding of facts stated that it disregarded this testimony.

Claimant lost five days' work immediately after the accident. He was not reassigned to the same work, but was assigned to work on a small press, which was described as lighter work. He said he was unable to do the same type of work he did before the accident because of the injury to his back. He quit work about ten or twelve weeks before the Referee's hearing, which was the latter part of December, 1960. He testified further that he quit because he could not do his usual work and because of the pain in his back. Co-worker Sills confirmed that claimant did not walk as straight as he normally did, that he continued to complain to others of pain in his back after he returned to work. Nurse Jerry Borina stated she also noticed claimant thereafter and noticed he had a different way of walking; that he held himself stiff.

The Commission found that the employee sustained an accident, which consisted of the slipping of claimant's foot in oil while he was lifting a sheet of metal to turn it, arising out of and in the course of his employment with employer on February 8, 1960, which resulted in an injury to his back and spine; that the employee did in fact have some previous disability and possibly incurred further disability from a subsequent accident referred to in the evidence occurring on or about May 20, 1960; but they determined that the permanent partial disability of the body as a whole, referable solely to the accident of February 8, 1960, equals 15 percent of the body as a whole (including any injury to the nervous system or psychiatric overlay that might have resulted therefrom). The Final Award was for a total sum of $2,438.58, which was for 9/7ths of a week's Healing Period at $45.00 per week, and 60 weeks' permanent partial disability for 15 percent permanent partial disability of the body as a whole, referable to back and spine.

On this appeal employer contends that there was no accident to employee; that there is no causal connection between the accident, if any, and the injury resulting in permanent partial disability; that the award is based upon speculation, surmise and conjecture; and therefore the findings and award by the Commission are not supported by competent and substantial evidence.

It is the duty of this Court to determine if there was competent and substantial evidence upon the whole record to support the findings of the Industrial Commission and the action of the Circuit Court in affirming the award granted to employee by the Commission. The award cannot be based on speculation, surmise and conjecture. These guides have been well established by the Supreme Court in Banc. Constitution of Missouri, Article V, Section 22, V.A.M.S.; Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55; and this Court cannot substitute its own judgment on the evidence for that of the Commission.

Ossery v. Burger-Baird Engraving Co., Mo., 256 S.W.2d 805; Cole v. Best Motor Lines, Mo.App., 303 S.W.2d 170.

■ We find that the evidence outlined above in this opinion is sufficient to sustain the finding that there was an accident arising out of and in the course of claimant's employment by Day-Brite Lighting, Incorporated. Employer makes much of the point that claimant did not tell others, such as his co-worker Sills, the company nurse, and the doctors that "his foot slipped in oil". Claimant, as shown above, did testify that his foot slipped in oil while turning sheets of metal and he was injured. Claimant told all these persons he was injured turning the sheets of metal. The fact that he may not have also told them that he slipped in oil perhaps would go to the weight to be given to his testimony and the credibility thereof, but these issues have been resolved against employer, and we believe rightly so. Gordon v. Chevrolet-Shell Division of General Motors Corp., Mo.App., 269 S.W.2d 163; Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W.2d 136.

■ The employer's complaint of causal connection to the injury of February 8, 1960, deals primarily with the issue of a second accident to claimant on May 20, 1960, and of evidence to support the finding of permanent partial disability. Evidence about this second injury was largely excluded on objection of the employer. The doctors' testimony, reports, and claimant's own testimony about his condition prior to and after the above dates, which are set forth above, are sufficient to support a finding against employer on these points, particularly in view of the Commission award, which specifically considered these issues and made findings thereon. The courts have repeatedly said that the extent and percentage of disability is a finding of fact within the special province of the Commission to determine. The evidence outlined above supports the findings of the Commission and the award. Barron v. Mississippi Lime Company of Missouri, Mo.App., 285 S.W.2d 46; Hammett v. Nooter Corp., Mo. App., 264 S.W.2d 915; Garrison v. U. S. Cartridge Co., Mo.App., 197 S.W.2d 675.

■ In our opinion, there was competent and substantial evidence upon the whole record of this case to support the findings and award of the Industrial Commission, and it follows that the judgment of the Circuit Court affirming the award of the Commission should in turn be affirmed by this Court. It is so ordered.

WOLFE, Acting P. J., and JACK P. PRITCHARD, Special Judge, concur.

ANDERSON and RUDDY, JJ., not participating.