**William R. DAVIS, Claimant-Employee, Respondent,**

v.

**Barnet BREZNER, Employer, Appellant.**

**Fireman's Fund Insurance Company, Insurer.**

No. 8302.

Springfield Court of Appeals.

Missouri.

May 28, 1964.

Motion for Rehearing or to Transfer Denied June 30, 1964.

Orville C. Winchell, Lebanon, for appellant.

Claude T. Wood, Richland, Jay White, Rolla, for respondent.

RUARK, Presiding Judge.

This is an appeal by the employer in a workmen's compensation case involving a shoulder injury. Claimant Davis was bent

over in the bottom of a ditch astraddle of an eight-inch pipe which he was fitting. The ditch was thirteen and one-half feet deep. Along the top of the ditch was a pile or row of loose dirt four feet high. Atop the dirt was a rock, described as "about the size of a steering wheel" and estimated to weigh seventy-five to one hundred pounds. A workman dislodged the rock. It went down the dirt, into the ditch, and struck claimant in the upper part of the back between the shoulder blades and the left shoulder. Claimant rejected an offer to take him to a physician because he preferred to go to Dr. Cottingham, his family physician. Dr. Cottingham testified that he found an abrasion and some discoloration indicating a bruising of muscle fibers.

Chronologically:

*June 30, 1960,* the accident occurred. There is no serious dispute as to this.

*July 1 to July 11, 1960,* claimant was treated by Dr. Cottingham, D. O. of Rolla, Missouri, the physician of his choice.

*July 11, 1960,* Dr. Cottingham discharged claimant as able to go back to work.

*August 16 through September 20, 1960,* Dr. Cottingham again treated claimant. Claimant told him he had aggravated his shoulder by using a jackhammer on August 12.

*September 23, 1960,* claimant told Dr. Cottingham he was going to the V. A. Hospital in St. Louis.

*October 10, 1960,* claimant returned to Dr. Cottingham and asked him for a statement that he was physically able to work. The doctor gave the statement.

*March 21, 1961,* claim for compensation was filed.

*October 25, 1961,* claimant went back to his family physician for a re-examination.

Dr. Cottingham, as will appear more fully hereafter, felt that claimant was not suffering from any disability.

*March 20, 1962,* he was examined by claimant's witness Dr. Ward of Richland, Missouri, who classified himself as a semi-retired ex-army surgeon engaged in general practice.

*July 18, 1962,* he was examined by employer's witness, Dr. Francis, an orthopedic surgeon of Springfield, Missouri.

*January 15, 1963,* hearing was had before the referee who found claimant had sustained permanent partial disability to the body as a whole to the extent that he was entitled to forty weeks compensation with no healing period. The commission adopted and made its award upon the findings of the referee. This was sustained by the circuit court and the employer appeals

Claimant continued as an employee after the accident and was paid wages until sometime in September or October, 1960; but he says that during this period he did light work or no actual work at all, although he was on the payroll. Then he drew unemployment compensation. He says he drew "approximately around four hundred dollars" unemployment. Thereafter he says he worked for "one or two days" for an electric company, and then (time not clear) he started on a construction job as union steward and foreman. His pay scale on this work is higher than the wages he was drawing at the time of the accident. He testified that on this job he is not required to do any heavy work or lifting. His work consists largely of walking around telling the men what to do. Apparently (although the evidence is not very clear) he was still holding this job at the time of the hearing before the referee.

Claimant testified that prior to the accident he had had no trouble with his back but that after the accident he had pain in his

back between his shoulder blades which ran up into his neck; that, as to the left arm, "get it in a twist and it would hurt, the leaders would swell up in my neck and knot up." Prior to the injury he could use a jackhammer or pavement breaker or "bust rocks," but afterwards he couldn't do so without pain; that, although the past year prior to the hearing (on January 15, 1963) he had worked "pretty steady," he didn't do any heavy lifting or pick up anything which weighed more than three pounds. As to the condition existing at time of hearing: "This arm here it—whenever I work it up and down it gets pretty sore in there and it becomes kinda weak * * * in the top of my shoulder and down back of my shoulder blade * * * left shoulder blade * * over work or any kind of a twist or lift on my left side." He said he had been able to abduct his arm (bring the arm out from the side of the body) for about a month, "since you [claimant] have been taking shots from Dr. Ward here recently? A. Yes."

Claimant's witness Dr. Ward (who first examined him on March 20, 1962) testified that he made abduction tests by having claimant raise his arm from the side of the body and by applying pressure to various points on his back and shoulder. He said that claimant indicated pain at an exact location which is the point where the suprascapular nerve comes out from under the scapula. The suprascapular nerve is a motor nerve which directs the activity of the supraspinatus muscle which in turn initiates abduction of the arm. He agreed that the symptoms were entirely subjective and that he had to take claimant's word that he suffered pain on pressure; but he felt that he had guarded against malingering by repeatedly applying pressure at various points and each time getting the same response at the same location. His conclusion was that claimant had suffered an injury to the suprascapular nerve and that this had resulted in a neuritis which was *probably* traumatic

in origin. He agreed that claimant had full range of motion except for difficulty in getting started on abduction. He had no atrophy or loss of strength. He said that in September 1962 claimant wasn't getting any better and "I put him on Vitamin B1 and Thiamine Chloride." He felt that the neuritis was paroxysmal. As to permanency or continuance, he stated, "Well, if they are going to recover, they usually recover and get—oh, in approximately—oh, we would dogmatically give them a year"; and "If it's traumatic and it persists for two years, I'd say it is quite a likelihood it would persist indefinitely without some type of surgery."

Dr. Cottingham, claimant's personal physician, testified as a witness for the employer. He stated that in his opinion the claimant had recovered from his injury when he examined him on October 10, 1960, and re-examined him on October 25, 1961; that he found no evidence, x-ray or otherwise, of any injury or disease which would affect the nerve or nerve supply, no limitation of motion, no atrophy or wasting of muscles. It was his opinion that claimant had fully recovered and was not suffering from disability.

Employer's witness, Dr. Francis, who examined claimant on July 18, 1962, testified that he found no evidence of orthopedic disability or anything else physically wrong, no loss in either supraspinatus or deltoid muscles, nothing unusual in shoulder contour or muscle size or atrophy. The claimant had full range of motion. He said that in connection with his tests and examination he observed claimant in movements of his arm. He was of the opinion that claimant had perfect movement of his arm and neck muscles, that the objective findings did not sustain claimant's complaints, and that claimant had no physical disability. He further stated that injuries to the area said to be involved are usually of short duration, and the nerve, if injured, would regenerate.

One assignment of error deals with a hypothetical question put to Dr. Ward:

Doctor, assuming that this claimant was working in a ditch on June the 30th, 1960, assume further that the claimant was—that this ditch was approximately thirteen and a half feet deep, assuming there was dirt on top of the ground—on top of the surface of the ground, assuming there was a rock on top of that dirt, assuming that that rock fell a total of approximately sixteen feet and struck this—this large rock fell a distance of approximately sixteen feet and struck this claimant on the area which you have described, the left shoulder blade, I'll ask you if in your professional opinion the condition which you concluded that existed in the supraspinatus muscle on your examination of March 30, 1960, to [sic] arose out of this assumed accident?

Objection was made on the ground the question did not incorporate all the facts. The objection was overruled and the witness answered:

I'd say that in all probability trauma caused it. In the report I wrote to Counselor White it is my opinion this man has neuritis of the suprascapular nerve probably traumatic in origin.·

The complaints here are that (a) the question improperly stated the date of the accident and the distance the rock fell, and (b) it did not incorporate the present physical condition of claimant nor did it include the work which claimant had done since the accident or the fact that the condition could have been the result of either injury or disease.

■ The *date of the accident* is stated correctly. As to the distance the rock fell, a witness stated "it fell from the top of the bank, up in the dirt, running up and down the loose dirt, probably sixteen or seventeen feet." We feel that under the circumstances the use of the words "approximately sixteen feet" was not such a variation from the facts as to contaminate the answer.

■ Dr. Ward had already testified that neuritis could come either from a systemic infection or from trauma but that, since the claimant gave a history of having been struck by a falling stone, he would conclude the condition resulted from trauma. Thus the hypothetical question covered practically the same ground already testified without objection. This hypothetical question does *not* go to the extent or permanency of the injuries but, as we view it, only to the *causation*. As to causation, it is sufficient that the finding be supported only by reasonable probability. Smith v. Terminal Transfer Company, Mo.App., 372 S.W.2d 659, 664; Groce v. Pyle, Mo.App., 315 S.W.2d 482.

■ The proponent of a hypothetical question is not required to cover all the evidence in the case. He is required only to include such facts in evidence as to support his theory. Sneed v. Goldsmith, Mo. App., 343 S.W.2d 345; Huffman v. Terminal R. Ass'n of St. Louis, Mo., 281 S.W.2d 863, 870. And since the inquiry called only for an answer as to whether the condition (of neuritis) resulted from the assumed accident (which is not seriously disputed)—i. e., *cause and effect*—it was unnecessary to incorporate or hypothesize all the facts which might bear on the *permanency* of the injuries.

■■ A more serious contention of error is made because the rating was based upon ten per cent disability to the body as a whole rather than for a specific scheduled injury. The "catchall" portion of Section 287.190 RSMo V.A.M.S., gives the commission a wide discretion in rating injuries which affect the body as a whole, and it is not limited to the medical evidence giving ratings to specific portions. Barron v. Mississippi Lime Co. of Mo., Mo.App., 285 S. W.2d 46; Komosa v. Monsanto Chemical Co., Mo., 317 S.W.2d 396; Henderson v. Laclede Christy Clay Products Co., Mo. App., 206 S.W.2d 673. Here the *injury* claimed was said to be to a nerve in the shoulder, but the *effect* of that injury was

as to the function of the arm in abduction. A somewhat similar situation confronted the court in Bumpus v. Massman Construction Company, Mo.App., 145 S.W.2d 458. Since that case held that the standard of measurement could be the percentage of disability of the body as a whole, we feel the question is settled, and the commission's rating on that account cannot be held to be erroneous.

We have more difficulty with appellant's remaining contention—viz., that the finding of permanent partial disability was based on conjectural, speculative, and questionable evidence. As we have stated, the finding as to the *cause* of injury need be based only on reasonable probability. But a finding as to *permanency* of injuries must be based upon evidence which produces a *reasonable certainty* (Russell v. Kansas City Public Service Co., Mo.App., 276 S.W.2d 644; Hammett v. Nooter Corp., Mo.App., 264 S.W.2d 915; Kiger v. Terminal R. Ass'n. of St. Louis, Mo., 311 S.W.2d 5, 14), although *absolute* certainty is not required. Garrison v. United States Cartridge Co., Mo.App., 197 S.W.2d 675; Leavitt v. St. Louis Public Service Co., Mo.App., 340 S.W.2d 131. The claimant has the burden of proving duration and extent of disability. Smith v. National Lead Co., Mo.App., 228 S.W.2d 407. But the fact that claimant has been able to work and draw wages is not conclusive against an award for permanent partial disability. Franklin v. St. Louis Independent Packing Co., Mo.App., 360 S.W.2d 350; Cole v. Best Motor Lines, Mo.App., 303 S.W.2d 170.

Two doctors testified that there was no existing injury or disability. One doctor testified as to the existence of the injury and disability and as to its permanency. Where there is a conflict of medical opinion and theory, the commission of necessity has authority to choose between them. Greer v. Missouri State Highway Dept., Mo.App., 362 S.W.2d 773; Joiner v. Farmers Exchange Cooperative Ass'n,

No. 304, Mo.App., 368 S.W.2d 547. Quite obviously it chose to give credence to the claimant's medical witness Ward and to disregard the evidence of Doctors Cottingham and Francis. Dr. Ward said there is "quite a likelihood" the disability would persist indefinitely without some type of surgery. No such operation was tendered. The surgery question was not developed as to extent, risk, or probability of recovery sufficiently that an intelligent opinion can be formed as to its desirability or practicality. All we get from such testimony is that a possibility of recovery by corrective surgery exists. See Hammett v. Nooter Corp., supra, 264 S.W.2d 915, 918.

We doubt that the words "quite a likelihood" taken alone express a reasonable certainty; but they must be interpreted in the light the witness intended them to express his thoughts. In Ballard v. Kansas City, 110 Mo.App. 391, 86 S.W. 479, the words "in all likelihood" were interpreted to express reasonable certainty. The doctor's expression as to permanency need not necessarily be in express terms. See Hammett v. Nooter Corp., supra. Our conclusion is that permanent partial disability as found under the "catchall" part of Section 287.190 RSMo, V.A.M.S., can be *inferred* from the whole evidence, although there be no single positive declaration to that effect. The commission is not solely dependent upon medical evidence. The finding is to be made from the whole evidence. Barron v. Mississippi Lime Co. of Mo., supra; Worley v. Swift & Co., Mo. App., 231 S.W.2d 828, 832. The testimony of the claimant or other lay witnesses as to facts within the realm of lay understanding can constitute substantial evidence of the nature, cause, and extent of the disability (Walker v. Pickwick Hotel, Mo.App., 211 S.W.2d 55, 58; Oertel v. John D. Streett & Co., Mo.App., 285 S.W. 2d 87; Conley v. Meyers, Mo., 304 S.W. 2d 9; see Rexroad v. Schultz Folding Box Co., Mo.App., 261 S.W.2d 493; Maddux v. Kansas City Public Service Co., Mo. App., 111 S.W.2d 208), especially when

taken in connection with, or supported by, some medical evidence. Slider v. Brown Shoe Co., Mo.App., 308 S.W.2d 306, 310. The commission is the judge of the facts, and the rule of deference as to oral testimony applies. Lindsay v. George F. Schulenburg Barrel & Drum Co., Mo.App., 227 S.W.2d 503; Henderson v. Laclede Christy Clay Products Co., supra.

■ The claimant testified that he still suffered from the disability at the time of the hearing, which was more than two and one-half years after the accident. It is true that the mere continuance of the disability is not in and of itself necessarily proof of permanency. Leavitt v. St. Louis Public Service Co., supra; see Heibel v. Robison, Mo.App., 316 S.W.2d 238. But it is a factor to be considered (see Toombs v. Deitz Hill Development Co., Mo.App., 159 S.W.2d 317, 319), especially in view of the testimony of the medical witness, whose testimony the referee and the commission chose to credit, that the conditions testified to which continued for such length of time are likely to be permanent.

■ It is of no moment that we might have reached a different conclusion on the evidence, for we cannot substitute our judgment on the facts. If the commission could reasonably have made its finding from competent and substantial evidence, we are bound to affirm. Davis v. Day-Brite Lighting, Inc., Mo.App., 366 S.W.2d 84; Brotherton v. International Shoe Co., Mo.App., 360 S.W.2d 108. Bearing in mind that our review is of the whole record and that we must accept all facts and legitimate inferences therefrom in the light most favorable to the award (Cross v. Crabtree, Mo.App., 364 S.W.2d 61, 64; Barton v. Western Fireproofing Co., Mo. App., 326 S.W.2d 344[1]; Mabry v. Tiffany Stand Co., Mo.App., 235 S.W.2d 863), we feel we are bound to affirm. It is so ordered.

STONE and HOGAN, JJ., concur.