Charles L. MASHBURN, Appellant,

v.

CHEVROLET–KANSAS CITY DIVISION, GENERAL MOTORS CORPORATION, Respondent.

Charles L. MASHBURN, Respondent,

v.

CHEVROLET–KANSAS CITY DIVISION, GENERAL MOTORS CORPORATION, Appellant.

No. 24249.

Kansas City Court of Appeals.

Missouri.

Oct. 4, 1965.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 6, 1965.

Application to Transfer Denied Jan. 10, 1966.

Robert L. Robertson, William W. Cochrane, Kansas City, Raymond, West & Cochrane, Kansas City, of counsel, for appellant.

Paul Scott Kelly, Jr., Tucker, Murphy, Wilson, Lane & Kelly, Kansas City, for respondent.

DAVID R CLEVENGER, Special Judge.

This is a Workmen's Compensation case involving a final award by the Industrial Commission, in favor of Charles L. Mashburn, Employee, against Chevrolet, Kansas City Division, General Motors Corporation, Employer and self insurer. On review, the Circuit Court of Jackson County affirmed the award of the Commission.

The Employee and the Employer each appealed and this court, upon motion, ordered the appeals consolidated.

The Referee's finding was that the Employee sustained an accident arising out of and in the course of employment resulting in injury to his low back and aggravation of a pre-existing condition thereof; that he was entitled to compensation for permanent partial disability to the extent of twenty per cent, or eighty weeks at $42.50; that the Employee was not entitled to an allowance for healing period, and denied his claim for medical expense. This finding is at some variance with that of the Industrial Commission.

The Industrial Commission, by its final award, found from all the credible evidence that the Employee, on January 25, 1962, sustained an accident arising out of and in the course of his employment with the Employer, which resulted in an injury to the low back and aggravation of a pre-existing condition thereof, which entitled him to compensation for permanent partial disability to the extent of ten per cent, or forty weeks at $42.50 per week; that he was also entitled to a temporary total disability allowance for a healing period, limited to thirty-one days, or four and three-sevenths weeks, at the rate of $47.50 per week; and that, by reason of the Employer's refusal to

furnish treatment, Employee was required to make payment to certain institutions and persons for expenses incurred for medical treatment, with a reimbursement to the Employee as and for hospital services. The total sum of the Commission's finding was $3,262.11.

The Employee claims that while working on the assembly line of the Employer a transfer machine turned a car frame over onto another line and, in so doing, a tie rod on the car frame came in contact with a table, and that he was compelled to jump in order to avoid being struck, and was thereby caused to fall on a slick concrete floor. The accident occurred at the plant of the Chevrolet, Kansas City Division of General Motors. The Employee, according to his own statement, sustained a "hard sitdown type of fall on the floor". The facts surrounding the alleged accident, together with his fall to the floor as described, were corroborated by a fellow employee who was an eye witness. The foreman testified that, immediately following the alleged accident, the Employee stated to him that, as the result of his jump and fall to the floor, he had injured his back.

The Employer's first-aid room record indicates that, on January 25, 1962, the Employee claimed he had injured his back while working on the assembly line and under substantially the same facts and circumstances as described by Employee's testimony. The Employee was taken to Menorah Hospital on January 25, 1962, where X-rays were made of the low back. He received no treatment and was discharged.

The record indicates the Employee returned to work on January 26 and continued to work until February 23, 1962. He was then given a ten-day suspension because of a shop rule violation. He returned to work on March 12 and 13, and terminated his job on March 14 because of increased pain and disability to his low back.

On March 14, the Employee consulted his family physician, Dr. Eshelam, M. D., and also Dr. C. C. McCullough, an orthopedic specialist. X-rays were taken and a lumbo-sacral back support was prescribed, which he wore off and on from and after that date. On March 28, he was examined and X-rayed by Dr. Joseph Lichtor, M. D., an orthopedic surgeon, who found a bilateral defect in the fifth lumbar neural arch, known as "spondylolysis"; and, that this condition had existed for a long period of time. Dr. Lichtor, in describing this condition, stated that the term "spondylolysis" is sometimes referred to as a congenital or progressive congenital condition.

The Employee, following his voluntary termination of employment, moved to Bolivar, Missouri. There, as a self-employed person, he worked in the tree trimming business and as a pest control exterminator.

The Employee testified he continued to have pain and soreness in his low back following the January 25, 1962, accident, which became progressively worse and, on occasions, affected his lower extremities. In the fall of 1963, he attended a football game and sat on the wooden bleachers. After the game he went to a cafe and, while there, sitting on a stool, the pain in his back became so severe that, upon leaving, his back seemed to "give out" on him and he put his hand on a juke box and slowly slumped to the floor. Two or three days after the cafe incident, he was taken to Menorah Hospital in Kansas City, where Dr. Lichtor performed a laminectomy of L-5, and a spinal fusion from L-4 to S-1. This operation was performed on October 8, 1963. The Employee remained in the hospital until October 16, 1963, and then returned to his home where he remained in bed for approximately three weeks, thereafter being permitted gradual ambulation.

The Employer has, at all times, denied Employee's claim for compensation, and has denied all allegations in the claim filed. Considering the answer as filed, it is assumed that the Employer denied that an accident did occur on January 25, 1962, since, in Point I of the Employer's brief and argument, the statement is made that in a

Workmen's Compensation case the plaintiff has the burden of proof to establish by competent and substantial evidence each and every element essential or necessary for his recovery.

■ The accident was reported by the Employee to the first-aid room, where a record was made confirming such accident. Since the evidence of the Employee, corroborated by an eye witness, and the Employer's record stands uncontradicted as to the question of the accident, it follows that we should and do find that there was substantial and competent evidence upon which the Commission could base the finding that there was an accident involving the Employee while in the course of his employment.

It is evident that the Employer's real contention in Point I of its brief concerns primarily the issue that there was no competent and substantial evidence to support the finding that the Employee sustained permanent partial disability as the result of the accident of January 25, 1962. As to this contention, the Employer urges that the Employee was involved in at least three incidents resulting in injury to his back, including the accident of January 25, 1962.

It is admitted by the Employee that, in June 1960, he had an accident which resulted in an injury to his back; that, subsequent thereto, he received heat treatments and, on several occasions, was treated by a chiropractor. He filed no claim by reason of this accident, nor is there any showing of any great loss of time as the result thereof, although the Employee does admit that from 1960 to 1962 he did, at times, have pain and soreness in his back while working on the assembly line.

A further examination of the record indicates that the Employee suffered some pain and discomfort following the 1960 incident; that, although on occasions he sought the services of a chiropractor, such pain was not of sufficient intensity to impair his ability to work on the assembly line from 1960 to 1962, or in continuing with his independent side-line business of tree-trimming. With respect to the contention that the Employee, as the result of the 1960 incident, was compelled to lose a great deal of work because of his back condition and numbness of the lower extremities, it seems rather significant that the Employer's complete daily work record of Employee, offered in evidence, did not substantiate this important point of its defense.

We believe the evidence is to the effect the 1960 accident resulted in a very minor injury, evidenced by the fact that following the accident he continued to work on the assembly line for some two years, with only intermittent treatments for back pain. The Employee did not file a claim for compensation as the result of the 1960 incident, nor is there any substantial evidence as to any great loss of time from his work.

■ Let us now review the record as to the October 1963 incident, referred to as the "cafe incident". The Employer claims that this incident could have caused the injury now claimed by the Employee. Employee denies receiving any injury from this incident, nor did the Employer offer any evidence in support of its position that this incident constituted an accident resulting in traumatic injury. Under the circumstances, we see no particular significance in Employer's claim that Dr. Lichtor was not advised of this particular incident since, under the evidence, such incident did not result in an injury. Dr. Lichtor testified that the accident of January 25, 1962, activated and aggravated a pre-existing condition of spondylolysis in Mr. Mashburn's back and produced symptoms of physical findings and disability, and that, as a result of the injury received, the condition of the Employee became progressively worse, finally resulting in surgery in 1963. It is our judgment that there was produced credible, competent and substantial evidence upon which Dr. Lichtor could base a finding as to Employee's disability

and its causal connection with the accident of January 25, 1962.

In view of all the record, we do not agree with the Employer's position that the hypothetical question addressed to Dr. Lichtor was based upon facts not supported by substantial evidence.

In the case of Garrison v. Campbell "66" Express, Inc., Mo.App., 297 S.W.2d 22, the court held that, in Workmen's Compensation cases where the defense was that the disability claimed was due to a prior injury, such contention on behalf of the Employer is an affirmative defense and, therefore, the burden of proof of the prior injury rests with the Employer. We, therefore, hold that the Employer, in offering no proof that the 1963 incident was in fact an accident resulting in injury or additional disability, failed to carry the burden of proof of subsequent injury and the Commission had the right, and did, by its decision, properly hold that the 1963 incident was not an accident and in no way contributed to nor was it the direct result of another or second injury to the Employee.

Employer, in support of its Point I, cites Sanderson v. Producers Commission Ass'n., 360 Mo. 571, 229 S.W.2d 563. In this case, the court held:

"We must determine whether the Commission could reasonably have made its finding from a consideration of all the competent evidence (and we should set the award aside if it is clearly contrary to the overwhelming weight of the evidence)".

This case discusses at great length the case of Scott v. Whelock Brothers, 357 Mo. 480, 209 S.W.2d 149, and also Ashwell v. United States Seed Co., Mo.App., 167 S.W.2d 950. We do not disagree with the Employer's contention of the law as found in these cases, but state that, in our opinion, in each, the facts differ from those in the instant case.

The courts of this state have repeatedly held that, in Workmen's Compensation cases, the Industrial Commission is the trier of the facts and, therefore, the sole judge of the credibility of the witnesses and the weight to be given their testimony. This court must sustain the Commission's finding if it is supported by competent and substantial evidence. McCoy v. Simpson, 346 Mo. 72, 139 S.W.2d 950; Stepaneck v. Mark Twain Hotel, Mo.App., 104 S.W.2d 761.

We do not agree with the Employer that there is such a great variance or conflict in Employee's testimony before the Referee compared with that of his prior deposition as would destroy the same to such extent that it would have no probative value. Even though there is some evidence that Employee's disability might have been caused by the 1960 accident, nevertheless there was substantial credible evidence that his disability, making it impossible for him to work with regularity, did not arise until after the accident of 1962. Therefore, the finding of the Commission that his disability arose out of the 1962 accident is supported by competent, substantial and credible testimony, and such finding should not be disturbed by an appellate court.

In Sanderson v. Producers Commission Ass'n., supra, we find the following:

"We agree with appellants' statement it frequently happens that there is no testimony in a case other than that of the plaintiff or claimant himself, but if from that testimony two different conclusions or inferences may be drawn as to the ultimate fact at issue, each of such conclusions or inferences being consistent with the testimony, and each inconsistent with the other, it remains for the triers of the facts to determine the issue and draw the inference and it does not become a question of law".

Dr. Lichtor, on direct examination before the Referee, in reading from his report of

August 21, 1963, made the following answer:

"My comment in summing up this examination and the previous examinations, history, physical findings, and X-rays, as follows: This man's difficulties are due to traumatic activation of symptoms and disability of a pre-existing condition of bilateral spondylolysis in the fifth lumbar neural arch. Defects of the neural arch, or spondylolysis usually occur in childhood or adolescence and usually are not productive of symptoms unless initiated by trauma. Symptoms and disability have continued for a considerable period of time in this man and he has not been able to return to his normal occupation involving heavy manual labor. Surgery may be necessary."

Following the August 21, 1963, examination, Dr. Lichtor, on October 6, received a long distance call from the Employee, who stated that he was in extreme pain and distress and had been for several days; that he was unable to tolerate the pain. He was brought to Menorah Hospital in Kansas City, where, on October 8, Dr. Lichtor performed a partial laminectomy of L-5, with a fusion between L-4 and S-1. Upon direct examination and in answer to a hypothetical question as to whether or not he had (after a detailed statement of facts) an opinion, based upon reasonable medical certainty, if the accident of January 25, 1962, either caused the condition in Charles Mashburn's low back, found on his examination of March 28, 1962, or whether or not the accident of January 25, 1962, activated or aggravated a pre-existing condition in Employee's back resulting in the condition he found by that examination on March 28, 1962, Dr. Lichtor said that he did have an opinion and his answer thereto was:

"It is my opinion that the accident of 25, January, 1962, activated and aggravated the pre-existing condition of spondylolysis in Mr. Mashburn's low back, and produced symptoms and the physical findings and the disability which I found on my initial examination of 28, March, '62, and I have been treating him for since".

▇ We do not agree with Employer's position that there was no competent and substantial evidence produced to prove that the Employee sustained permanent partial disability from the accident on January 25, 1962. The evidence as to the accident, followed immediately by the Employee's complaint and the examination and findings of Dr. Lichtor does substantiate the position of causal connection between the injury described and the accident.

▇ It is only by inference that the Employer has raised the question of whether or not an injury which accelerates or aggravates a disease to a degree of disability is compensable under the Missouri Workmen's Compensation Law. We note with interest that, as early as 1932, the St. Louis Court of Appeals, in the case of Harder v. Thrift Construction Co., 53 S.W.2d 54, held that an actual aggravation of an an existing infirmity caused by accident arising out of and in the course of the employment is compensable, even though the particular accident would have produced no such result in the case of a normal and healthy individual, so there can be no question as to whether or not in the instant case such an injury would be compensable. We now so hold. The legal theory expressed in this case was commented upon in the Garrison v. Campbell "66" Express, Inc., case, supra.

We next turn for consideration to Point II of Employer's brief, wherein it is contended that the award for a healing period and allowance for medical expense both incurred in October, 1963, was not supported by competent and substantial evidence.

The position of Employer, as to this point, is that to support the final award for the healing period and medical expense, the Commission would be compelled to first find that the fall at the cafe in 1963 was

directly caused by and was a direct result of the January 25, 1962, accident. The record does not indicate a "fall" at the cafe. The only evidence as to this incident came from the Employee; it was that he was suffering from pain and his back seemed to give out on him, causing him to slump to the floor. This incident confirms the evidence of Dr. Lichtor that, from the date of the 1962 accident, the Employee's condition became progressively worse, finally requiring surgery.

We are fully aware that the Employee cannot rely upon any testimony produced by Employer to supply the required causal connection, but, since we have already found that the Employee met this test, we further find that the evidence of Dr. Zuber does, in fact, support Dr. Lichtor's evidence on this point. Dr. Zuber examined Employee on behalf of Employer November 18, 1963, following Employee's surgery, and again in March, 1964. Dr. Zuber's answer to a hypothetical question upon cross examination was as follows:

"Q. Well, doctor, in what manner would you alter your opinion if it were also a fact that Mr. Mashburn did apply to his company and asked for medical assistance and then later did go to his own family physician and Dr. McCullough for help, and that time has been established on the medical help about the middle of March, following the January 25th incident, and that the demand made on the company was some time in this interim?

"A. I would have to alter my answer in this respect. Whereas previously stated that the incident of January 25, 1962, because of the reasons I outlined to you in my opinion had nothing to do with the condition that he presented himself to Dr. Lichtor with in March, taking into account the additional history which you gave me, stating that the condition became worse specifically following this incident of January, 1962, and assuming numerous propositions that he had to eventually terminate his employment, I would have to find a definite connection between the incident and his disability that he had when he presented himself to Dr. Lichtor that it was causative, but that it was a condition which had altered a pre-existing disorder in his low back."

■ The law charges the Employee with the burden of establishing causal connection between the accident and injury. The proof necessary to meet such burden, we believe is suported by the testimony of Dr. Lichtor, who, upon his first examination, stated his opinion was that the Employee's back condition was the direct result of the trauma received in the accident of January 1962. We do not agree with the Employer that the Employee received little treatment, when the testimony, standing uncontradicted, was to the effect that beginning March 28, 1962, to the date of the operation in 1963, the Employee was seen by Dr. Lichtor on some fifteen occasions, where he was observed, X-rayed, received treatment, and was given medical advice concerning the limitation of his work and activities.

■ It is our opinion that, taking into consideration all of the testimony as a whole, the award for a hearing period and an allowance for medical expense was a proper finding, and was supported by competent and substantial evidence. We, therefore, rule against Employer as to its Point II.

■ The third and final point relied upon by the Employer is that the Commission erred in ordering Employer to pay medical expense incurred by Employee without authorization of the Employer and without order from the Division of Workmen's Compensation, treatment being more than ninety days after the accident, and that there was no competent and substantial evidence to support a finding that the Employer failed or refused medical treatment, or, if so, such finding was contrary to the

overwhelming weight of the evidence. In support of its contention on this point, the Employer takes the position that the record evidence does not prove a waiver by it of its rights created by Section 287.140 RSMo 1949, V.A.M.S. In passing upon this issue, we must again examine the record as to the facts offered by Employee supporting his claim for medical expense when so incurred by him beyond the ninety-day statutory period without special order from the Industrial Commission. The Employee's responsibility as to this issue is the same as on any other issue upon which he relies to support his claim under the Workmen's Compensation Law, and the evidence must meet the same test and be reviewed by us in the same light as any other issue.

■■■ It is most apparent from the Employee's testimony that he was denied medical assistance when he was told by the regular nurse that she couldn't diagnose what was wrong and that he *"see a doctor"*. This, in our opinion, was not only a refusal but an invitation, by a company employee in charge of the first-aid room, for Mashburn to seek a doctor of his own choice. Following this refusal, the Employee was examined on March 14, 1962, by Dr. McCullough, M. D., and, according to Employee, he made a claim through his then Employer for sickness and/or accident against the Metropolitan Life Insurance Company, under the Group Insurance Program of General Motors. This claim, "Exhibit P", discloses a statement concerning the injury of January 25, 1962, and was signed by the Employee, so that the company was first advised of the claim of the Employee on the very day of the accident, followed by his request to the nurse for medical assistance. Certainly, the Employer was put on notice, not only of the injury to the Employee, but of the fact of his claim as to disability. See Hammett v. Nooter Corp., Mo.App., 264 S.W.2d 915.

■■■ Employer, in further support of its contention as to Point III, cites the case of Kopolow v. Zavodnick, Mo.App., 177 S.W.

2d 647. The facts in this case show that, after receiving the first treatment by the company doctor, the employee thereafter sought an independent physician of her own choice and did not again make a request of the employer for medical assistance. In this case, Mashburn sought medical aid, but was told to *"see a doctor"*. It was only after being denied medical aid that he went to a doctor of his own choice. We are convinced that, under the evidence, the Commission was justified in finding that there was a waiver by the Employer of its statutory rights as created by Section 287.140 RSMo 1949, V.A.M.S.; Hammett v. Nooter Corp., supra; Slider v. Brown Shoe Co., Mo.App., 308 S.W.2d 306; Evans v. Chevrolet Motor Co., 232 Mo.App. 927, 105 S.W.2d 1081. Considering all the testimony, we find that there was competent and substantial evidence to justify the finding of the Commission against the Employer as to its Point III and that such finding was not contrary to the overwhelming weight of the evidence.

■■■ The first point in Employee-Appellant's brief concerns the rule that the Workmen's Compensation Law is to be liberally construed and this rule applies to the question of the amount of the award of compensation. Although we agree with the Employee as to the rule, its application still rests with the Commission; it being its sole duty, as the trier of the facts, to determine the amount of the award, if any. Its finding, if based upon competent and substantial evidence and not being against the overwhelming weight of the evidence, must be affirmed by this court.

What we have said heretofore disposes of all points in Employee-Appellant's brief except subparagraphs a and b, under Point III. This poses the issue that the award of the Commission was insufficient as to permanent partial disability because the calculations seemed to be based upon the theory that the case was one of second injury. This case was neither submitted nor tried on a theory of "second injury", and we do

not agree that, merely because the Referee made inquiry of Dr. Zuber concerning his opinion as to the extent of aggravation, it necessarily follows the Referee or the Commission made their findings based upon an improper calculation.

We have considered the case of Gegg v. St. Louis Independent Packing Company, Mo.App., 271 S.W.2d 223, involving injury to an employee resulting in aggravation of a defect of the neural arch and believe, on its facts, it is not applicable to the case before us. A review of the other cases cited by the Employee present facts which we also consider not applicable to the case before us. Therefore, we are not convinced that we should disturb the Commission's final award in this case.

We find that the Commission's final award is supported by competent and substantial evidence, and is not against the overwhelming weight of the credible testimony. The judgment of the circuit court is affirmed.

All concur.