Frances COWICK et al., Respondents,

v.

GIBBS BEAUTY SUPPLIES and Liberty Mutual Insurance Company, Appellants.

No. 24956.

Kansas City Court of Appeals. Missouri.

June 3, 1968.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 1968.

A. Warren Francis, Lloyd A. Hamrick, Roger J. Staab, Kansas City, for appellants.

Thomas M. Sullivan, Downey, Sullivan, McCormick & FitzGerald, Kansas City, for respondents.

SPERRY, Commissioner.

This is an appeal from a judgment affirming the award of the Industrial Commission in favor of claimants, the widow and dependent children of Jack E. Cowick, deceased, against deceased's employer, Gibbs Beauty Supplies and its insurer, Liberty Mutual Insurance Company, appellants.

Deceased was an employee of Gibbs. February 1st, 1966, at 12:45 P.M., he was involved in a severe automobile collision while travelling from Gibbs' place of business to his home for the claimed purpose of picking up some packages of merchandise, belonging to Gibbs, in order to deliver them to Gibbs' customers later. He died as a result of a heart failure, at about 1:36 P.M., at his home, five blocks from the scene of the accident.

Claimants contend that deceased died as a result of an accident which occurred in the course of and arose out of his employment. Appellants deny that the accident occurred in the course of his employment, or that it arose out of his employment. They also contend that the evidence is insufficient to show that Cowick's death resulted from a cause for which employer was liable, that is, death was a result of the automobile accident. They contend that, considering deceased's weakened heart, death could as well have been caused by his having walked home from the accident, five blocks, through snow.

The claim was duly filed and a hearing was held before a referee who made the following findings of fact:

"I find from the evidence that the employee, Jack E. Cowick, now deceased, on February 1st, 1966, sustained an accident in an automobile collision arising out of and in the course of employment with Gibbs Beauty Supplies in Kansas City, Jackson County, Missouri; that said accident resulted in an aggravation of a pre-existing heart condition; that the aggravation of said heart condition resulted in his death on said date.

\* \* \* \* \* \*

"I further find that the sum of $16,500 be paid to the widow, Frances M. Cowick, and the mother and natural guardian of said seven children over a period of 317.-307 weeks; that this amount is apportioned between said widow and seven minor children, as follows, in accordance with Section 284.240 RSMo 1959 and amendments thereto: Frances M. Cowick $17.00 per week; minor children Dennis Cowick $5.00 per week; Timothy Cowick $5.00 per week; Theresa Cowick $5.00 per week; Michael Cowick $5.00 per week; Julia Cowick $5.00 per week; and Christine Cowick $5.00 per week, to be used for the sole use and benefit of the seven minor children".

This award was affirmed by the full Commission and by the circuit court.

Deceased's employment at Gibbs' involved two kinds of service. In the forenoon he worked at the main place of business, doing whatever chores and duties that were assigned to him and, in the afternoon, he delivered packages. Mrs. Cowick stated that, occasionally, when his deliveries caused him to pass the home, he would eat lunch there; that, usually he would take his daughter to her place of employment in the morning, then return to the home where his son would assist him in loading into the car any packages which he had left in the home the night before; that he would then take the son to school and then report for work; that he ordinarily used his own car in this work but that, on February 1st, 1966, his vehicle was in a shop for repair; that, on that day, he took his daughter to work in the son's car; that,

later in the morning, he telephoned witness stating that the automobile failed to start, that he would pick it up later and return to the home to pick up a number of packages for delivery and would have lunch; that he did not return until after 12:00 noon, when he collapsed immediately after entering the house, and died.

Sharon Cowick stated that she lived in the family home but was employed; that her father's health had been good during the year and a half to two years prior to his death; that he was active; that, on the morning of his death, there was snow on the ground; that deceased drove her to work; that, after hanging up her coat, she glanced out of the window and saw her father sitting in the car trying to start it; that he came into the office and said that the car would not start; that he called a garage; that he then took a package from the car and left; that she did not see him again until she was called home and found him on the floor receiving artificial respiration.

John, deceased's son, stated that his father drove John's automobile to take Sharon to work; that his father came into the house about 1:30 P.M. and stated that he had been involved in an automobile accident; that, he said that he had received a hard jolt; that he collapsed onto the floor; that the witness assisted a policeman to administer aid but that Mr. Cowick's pulse ceased and he was taken to the hospital in an ambulance. He testified concerning a picture of the car taken after the collision. It portrayed the automobile, which appeared to have had a very hard blow from the rear, causing the body to be pushed forward on the frame several inches.

Patrolman Amos stated that, at about 12:45 P.M., he arrived at the scene of an automobile collision in which Mr. Cowick was involved; that the Cowick vehicle was not operable and witness caused it to be towed away; that there was snow on the ground; that Mr. Cowick walked from the scene, apparently to his home some five blocks distant. He stated that, at about 1:30 P.M., he was dispatched to the Cowick home to see if an ambulance was needed; that, when he arrived, he found Mr. Cowick on the floor; that he and John Cowick attempted to resuscitate the patient; that he was sent to the hospital in an ambulance.

Dr. Fritzlen, a qualified pathologist, stated that he performed an autopsy upon the body of Cowick; that he found no bruises or wounds which had been caused by the collision; that he found evidence of an old infarction; that there was artheriosclerosis, (hardening of the arteries); that this had resulted in narrowing the openings through which blood reaches the heart; that the cause of death was ventricular fibrillation; that the factors were present in this case which will aggravate a lack of blood supply; that "the first of these is the emotional stress of any accident which results in release of adrenalin and constricting of any blood vessel that can constrict. The second is the walk in the snow storm, which is physical exercise, *and that both* of these have to be regarded *as significant aggravating factors in precipitating his fatal ventricular fibrillation which, I presume, has to be the mechanism of death*", (emphasis ours); that considering decedent's condition "one does not have to look further. They, by themselves, would be regarded as sufficient".

Mr. Rourk, Gibbs' manager, stated that Mr. Cowick worked at the plant in the mornings and was paid by the hour; that in the afternoons he delivered packages, making up his own route; that he also did repair work and installed equipment; that he used his own automobile in his work and was paid a gasoline allowance; that, on the afternoon of his death, Mr. Cowick took no packages for delivery; that, a week after his death, witness went to the Cowick home and picked up packages that had been left there; that there was half a car trunk full of packages; that Mr. Cowick was required to pick up and return rejected merchandise; that he could have discharged

deceased because of unsatisfactory conduct in connection with any, part of his duties.

Mr. Tingle, an employee of Gibbs, stated that Mr. Cowlick was at work when witness arrived, about fifteen minutes until 9:00 A.M., February 1st; that Cowick said that he had had car trouble and had left the car someplace. The witness stated that Mr. Cowick did not always succeed in delivering all packages on a given day.

■■ We are limited in this review to a determination whether the award was supported by competent and substantial evidence and whether an award could have reasonably been made upon a consideration of all of the evidence. If the award is clearly contrary to the overwhelming weight of the evidence we should set it aside. Seabaugh's Dependents v. Garver Lumber Co., 355 Mo. 1153, 200 S.W.2d 55, 62.

The first question is whether if decedent's death was due to injuries received in the automobile, such injuries arose out of and in the course of his employment. Appellants contend that what was said in Heaton v. Ferrell, 325 S.W.2d 800 (Mo. App.) is controlling in this case. At page 805 the court said:

"The general rule is that an injury sustained by an employee while going or coming from his work does not arise out of and in the course of employment and is not compensable; and where, as here, an employee has a definite place of work and the time of work does not include his lunch hour, 'the trip away from and back to the premises for the purpose of getting lunch is indistinguishable in principle from the trip at the beginning and end of the work day, and should be governed by the same rules and exceptions' "

The court recognized certain established exceptions to the basis "coming and going rule".

In Daniels v. Krey Packing Co., 346 S. W.2d 78, 83 (Mo.), the court said of the "coming and going":

" * * * But that rule is not applicable where the employee during that period performs a special task, service or errand in connection with his employment".

In Gingell v. Walters Contracting Corp., 303 S.W.2d 683, 688 (Mo.App.), the court said:

" * * * As we understand this formula, it is not necessary that, on failure of the personal motive, the business trip would have been taken anyway *by this particular employee at this particular time*. It is enough that some one would have had to make the trip to carry out the business mission. If the trip would ultimately have had to be made, and if the employer got this necessary item of travel accomplished by combining it with the employee's personal trip, it would be a *concurrent cause* of the trip, rather than an incidental appendage or afterthought. There is no occasion to weigh the business and personal motive to determine which is dominant.

\* \* \* \* \* \*

"We think this same formula is applicable when an employee, in the course of his normal journey to and from work, performs some *concurrent service* for his employer, and becomes an exception to the general rule excluding off-premises going-and-coming journeys—such as going from his home to his place of employment or returning therefrom to his home. The question then becomes: Was this mission of such character or importance that it would have necessitated a trip by someone if this employee had not been able or willing to handle it in combination with his homeward journey?". (Emphasis ours).

■ The fact that deceased was on a trip to his home when the accident occurred, where he intended to eat lunch and

also to pick up a half car trunk full of Gibbs' parcels for delivery, brings this case within the rule of the Gingell case. That Mr. Rourk eventually picked up these packages indicates that someone, at some time, was required to make this trip.

 The burden was upon claimants to show not only that deceased suffered an injury arising out of and in the course of his employment, but that his death resulted from such injury. Kerby v. Missouri State Highway Commission, 238 S.W.2d 464, 469 (Mo.App.).

The medical evidence was to the effect that death was caused by a heart attack. If that attack resulted from the accident then it is compensable. Johnson v. Scott County Milling Co., 101 S.W.2d 123, 128 (Mo.App.). Appellants contend that claimants have failed to prove that death was due to the automobile collision as distinguished from deceased's walk in the snow. Dr. Fritzlen said that the heart was in a dangerously weak condition due to artheriosclerosis, previously existing; that deceased could have died at any time, in his chair or in his bed. However, he stated that the cause of death, fibrillation of the heart, was "precipitated" by the excitement due to the collision and to walking home through the snowy streets. In Webster's Third New International Dictionary, page 1784, "precipitate" is defined as to cause to happen or come to a crisis suddenly, unexpectedly, too soon, to bring on quickly or abruptly.

 If an accident results in aggravating or accelerating a pre-existing disease or condition, it is compensable. Mashburn v. Chevrolet—Kansas City Division, 397 S.W.2d 23, 29 (Mo.App.). There is evidence here from which the Commission could have found that the accident activated the condition which caused death to occur at the time it happened; that it was an efficient, exciting, superinducing, concurring, or contributing cause of death. Wilson v. Emery Bird Thayer Company, 403 S.W.2d 953, 958 (Mo.App.).

The Commission is the sole judge of the credibility of witnesses and the weight to be given to their testimony, Mashburn, supra, 397 S.W.2d 1. c. 28. We view the evidence in the light most favorable to the prevailing party. Wilson v. Emery Bird Thayer Company, supra, 954. Considering all of the evidence, including medical, we hold that there is substantial evidence upon which the Commission based its award. We cannot hold that the award is contrary to the overwhelming weight of the evidence.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court. All concur.