**William A. GREEN, Appellant,**

v.

**BAXTER LUMBER COMPANY, Respondent.**

**No. 25200.**

Kansas City Court of Appeals.

Missouri.

Dec. 1, 1969.

J. Wm. Blackford, Blackford & Wilhelmsen, Kansas City, for appellant.

Gary E. Lowe, Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, for respondent.

JAMES W. BROADDUS, Special Commissioner.

This case involves an appeal from the award of the Industrial Commission denying workmen's compensation benefits under the Missouri Workmen's Compensation Law to claimant William A. Green. The Industrial Commission found:

" * * * from the competent and substantial evidence upon the whole record that William A. Green did not sustain an injury as the result of an accident arising out of and in the course of his employment for Baxter Lumber Company, on March 20, 1965."

An appeal was taken to the circuit court of Saline County and that court sustained the finding of the Commission. Claimant then perfected his appeal to this court.

The claimant testified that his occupation was cutting walnut trees and that his first contact with the Baxter Lumber Company was in January of 1965. Claimant further testified that he had received fifteen or twenty checks from the Baxter Lumber Company for previous work on which his pay was figured by five to six cents per board foot per tree. On March 20, 1965 claimant stated that he met Richard Trosper, an employee of Baxter Lumber Company, at Malta Bend for the purpose of cutting trees on Dan McRoberts' farm. During this time he was injured when a tree fell on his leg. Claimant

testified that Trosper called him on Friday night, March 19, 1965, telling him that Baxter Lumber Company had bought the walnut trees on Dan McRoberts' property and that he Trosper, and claimant would cut them. Claimant testified that when he cut trees for Baxter Lumber Company, he was paid five to six cents a foot. Claimant further testified that he had had previous dealings with Baxter in which he had purchased and sold trees to the company. During his dealings with Baxter Lumber Company on March 8, 1965, claimant was paid a range of eight cents to $1.00 per foot for several trees that he had cut with Trosper at Warrensburg, Missouri. He stated that this was paid for by Baxter Lumber Company but that he was not cutting them for Baxter. He next worked for the Baxter Lumber Company on March 15, 1965 when he sold five logs to the Company in Liberty, Missouri. The quality of these trees ranged from nine cents a foot up to eighty cents a foot and the claimant stated that he was not cutting these for Baxter Lumber Company. On March 18, 1965, he sold seventeen logs to the Baxter Lumber Company. The price range for these logs was from eight cents a foot up to seventy cents a foot. The claimant once again stated that he was not cutting these trees for the Baxter Lumber Company. On March 21, 1965 the claimant was paid for two other logs that he had sold to the Baxter Lumber Company, once again being logs that he owned, cut and sold to the company. The claimant did not cut these specifically for the company either. Again, he was paid with the value ranging from eight cents a foot to seventy cents a foot and, once again, claimant did not claim to be cutting these for the Baxter Lumber Company. On May 11, 1965 claimant sold four logs to the Baxter Lumber Company, being paid a range of thirteen cents to twenty-five cents a foot. Once again, claimant did not claim to be cutting them for the Baxter Lumber Company and stated that this transaction was another one of his own deals. Claimant testified that the only

knowledge he had regarding the trees to be cut at Malta Bend, on the day of the alleged accident was what Trosper told him. Claimant was paid $400 for his work on those trees. Claimant testified that he certainly would not have been entitled to $400 from the Baxter Lumber Company for cutting ten logs at six cents a foot.

Two other men were with claimant at the time of the accident, these being Trosper and Richard Brown. Claimant testified that when more than one individual was working for a company cutting logs at five to six cents a foot, the men working were paid a total of five to six cents a foot and these men had to split the lump sum wages. Claimant further testified that Trosper, Brown and he would have had to split the check three ways for their work at Malta Bend if such check had been figured on the basis of six cents per foot. He further testified that under these circumstances he probably would not have received more than $50 for his work at Malta Bend.

Richard Trosper, testifying on behalf of the alleged employer, stated that early in 1965 he had been employed by the Baxter Lumber Company as a log and timber buyer. He related that there were basically two ways by which the lumber company obtained timber; i. e. either to buy standing timber or to buy logs after the trees had been felled and cut. When a lumber company purchased standing timber, the lumber company was required to make arrangements to have the timber cut. When the lumber company purchased cut logs it was purchasing logs which had been cut by someone else. The cost of buying cut logs was based upon the quality of the logs. This was more expensive to the lumber company and, accordingly, the lumber company preferred to purchase standing timber. In March 1965, prior to appellant's injury, Trosper had tried to buy, as standing timber from P. B. McRoberts at Malta Bend, Missouri, eighteen standing walnut trees. However, he was not able to purchase the trees as standing timber. Ac-

cordingly, Trosper agreed with Mr. McRoberts that Trosper, individually and on his own behalf, would cut the logs for McRoberts. For these services Trosper would receive 40% of whatever sum McRoberts realized from the sale of the logs, and McRoberts was free to sell the logs to whomever he could. Trosper then became worried about whether his arrangement would affect his job. Consequently, he asked his brother-in-law, Richard Brown, and appellant if they would like to take over the cutting for McRoberts for the 40% and his brother-in-law and appellant agreed. Trosper told appellant specifically that McRoberts had the trees and wanted them cut, and was willing to pay forty percent for the cutting. At that time Trosper had not purchased any trees from McRoberts and had no agreement with McRoberts that McRoberts would sell cut logs to the Baxter Lumber Company. The logs were later purchased by Trosper for Baxter Lumber Company, but this was after the logs had been cut and piled on McRoberts' farm. The Baxter Lumber Company paid $3,500 for the cut logs, and at McRoberts' request Trosper wrote separate checks to McRoberts, Brown and appellant for their respective interests in the proceeds. Appellant received $400 as his share and Brown received $750 as his share. However, had the trees been owned by Baxter Lumber Company as standing timber, and had Baxter Lumber Company hired appellant and Brown to cut the timber, the maximum amount which Brown and appellant jointly would have received for the cutting was a total $436.32.

McRoberts testifying on behalf of the alleged employer stated that he was a land owner and farmer at Malta Bend; that early in 1965 he was contacted by a number of lumber buyers who wanted to buy some of his walnut timber. However, he declined to sell the timber as standing timber, as he felt that he would get more money by selling the trees as graded logs after they had been cut. He said he did not have time to cut the logs himself and he was, accordingly, willing to pay 40% of

what he ultimately sold the graded logs for to have them cut. Richard Trosper, who had unsuccessfully tried to buy the trees as standing timber for Baxter Lumber Company, had told McRoberts that he knew somebody who would do the cutting for McRoberts and this was done. None of the trees had been sold prior to the time they were cut, and McRoberts said he had no agreement with Baxter Lumber Company that he would sell the cut logs to them. The logs were not sold to Baxter until after they had been graded and hauled out, and after he had received bids from four other interested purchasers as well. At the time the logs were cut and graded they were McRoberts' logs, and he was free to sell them to anybody he wanted.

Our review of this appeal is limited to a determination of whether there was sufficient competent evidence in the record to support the award. Cowick v. Gibbs Beauty Supplies, Mo.App., 430 S.W.2d 626. In other words, the reviewing court may not substitute its judgment on the evidence for that of the Commission. Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W.2d 647. And in reviewing the award, the record must be reviewed in the light most favorable to sustain the award. Robertson v. United States Fidelity & Guaranty Co., Mo.App., 416 S.W.2d 192.

It is quite apparent that the Commission, in denying compensation to appellant, based its decision on the fact that appellant was not an employee of the respondent at the time of the accident in question.

When reviewing the testimony of McRoberts, the farmer and land owner in Malta Bend, on whose land the timber in question was being cut, it is quite clear that Baxter Lumber Company was in no way involved in this operation at the time of appellant's accident and injury. Mr. McRoberts' testimony, alone, if believed, would be sufficient competent evidence to sustain the award. On direct examination he testified that at the time the logs in question were cut and graded, they were his

logs and he was free to sell them to anybody he wanted. And on re-direct examination he was asked:

"And you sold them to Baxter after they had been cut and stacked and graded? A. That's right. Q. And up until that time you had no agreement with anybody that you would sell these to Baxter, did you? A. No. Q. You considered that they were your logs and you were free to sell them to anybody you wanted to? A. That's right."

The testimony of Richard Trosper further substantiated the finding when he testified that he had not purchased any trees from McRoberts and that he had no agreement with McRoberts that McRoberts would sell the cut logs to Baxter Lumber Company.

The cases cited by appellant as supporting his right to recover are distinguishable from the instant case on their facts. In Baker v. Iowa-Missouri Walnut Log Co., Mo.App., 270 S.W.2d 73, relied on heavily by appellant, the log company had purchased the trees which Earl Baker was cutting at the time of his injury. The log company had contracted with Eldon Baker, brother of Earl, to cut the trees. This court held that Earl Baker was a statutory employee of the log company because (1) the log company had contracted with Eldon to cut the trees, and (2) because the trees which Earl Baker was cutting at the time of his injury *were owned by the log company*. The purchase of the trees, the court held, placed the log company in exclusive possession of the premises *for the purpose of removing the trees it had purchased*. Otherwise, the court held, the contract of purchase would have been a nullity. This was the same situation in Cates v. Williamson, Mo.App., 117 S.W.2d 655, cited by appellant, since in that case the alleged employer had purchased the trees which were being felled. In Simpson v. New Madrid Stave Co., 227 Mo.App. 331, 52 S.W.2d 615, also cited by appellant, the stave company owned the land and the trees as well. In

every case cited by appellant, the alleged statutory employer had some contractual right to be on the premises where the injury occurred. No such right existed with respect to the Baxter Lumber Company, since neither it nor any of its employees had any right to be on the McRoberts land. McRoberts' dealings had been solely with Richard Trosper, individually and acting on his own behalf, and in this capacity Trosper has so dealt with appellant.

Your Special Commissioner is of the opinion that there was sufficient and substantial evidence in the record to support the award of the Commission, and so recommends that the judgment of the circuit court should be affirmed.

PER CURIAM.

The foregoing opinion by JAMES W. BROADDUS, Special Commissioner, is hereby adopted as the opinion of the court and the judgment is affirmed. All concur.