Walter R. GERLEMAN, Deceased,
Plaintiff-Respondent,

v.

STERLING ENGINEERING COMPANY,
Defendant-Appellant.

No. 43102.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 23, 1982.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
March 19, 1982.

Edward M. Vokoun, St. Louis, for defendant-appellant.

Thomas M. Walsh, Wayne B. Wright, Clayton, for plaintiff-respondent.

STEPHAN, Presiding Judge.

On a claim for death benefits under the Missouri Workmen's Compensation statutes by the widow of deceased employee Walter R. Gerleman, the referee denied compensation.  The Labor and Industrial Relations Commission reversed his decision, one member dissenting, and awarded the widow the lump sum of $18,619.28 plus $95.00 weekly for her life or until remarriage.  The employer, Sterling Engineering Company, and its insurer, Hartford Accident & Indemnity Company appealed to the circuit court, which affirmed the Commission's award. On further appeal to this court, we affirm.

Walter R. Gerleman, age 67, was employed by Sterling Engineering Company as a structural and architectural engineer. He led an active life both professionally and socially and did yard work and repairs around his house. On May 17, 1976 Gerleman was a passenger in a company car that collided with three other vehicles. Both employer (Sterling) and its insurer (Hartford) stipulated that Gerleman sustained injuries arising out of and in the course of his employment. Gerleman was treated in the emergency room at Normandy Osteopathic Hospital for abrasions and contusions to his scalp, forehead and hands. He complained of pain in his head, neck, back and hands but no fractures were found. He was released from the hospital that same afternoon.

Upon arriving home, Mrs. Gerleman contacted her husband's physician, Dr. Jack Gandlmayr, and he caused Mr. Gerleman to be admitted that evening to Faith Hospital. Upon admission, Dr. Gandlmayr found Gerleman to be in acute discomfort from ecchymosis and lacerations of the scalp, nosebleed, contusions on arms, hands and left shin, pleural effusion, bronchopneumonia and hypertension. Gerleman was also suffering from chest pain and contusions of the left lower chest. A radiological examination made on May 19, 1976 revealed possible chronic pneumonitis, marked cardiac enlargement, "minimal" congestive heart failure, aortic elongation, scoliosis of the spine, pulmonary vascular engorgement. A second radiological examination made on May 24, 1976, showed improvement in the heart size and pulmonary vascular engorgement. Gerleman was discharged on May 26, 1976.

On June 7, 1976, Gerleman saw Dr. Gandlmayr in his office and complained of headaches and shortness of breath. After the collision, he had not been able to dress himself at home, had trouble walking without assistance, and found it necessary to limit his activities to watching television and resting in bed.

On June 10, 1976, Gerleman went to sit on the porch of his residence. Mrs. Gerleman called to him and, receiving no response, went to the porch where she found him dead. Expert medical witnesses for the claimant, employer and insurance carrier agreed that the "terminal episode" in Mr. Gerleman's life was very probably cardiac arrhythmia.

The Commission found that "the accident and subsequent experiences of pain, anxiety and fear, ..." resulted in congestive heart failure which continued and eventually caused Gerleman's death. In finding that the accident was a "substantial contributing factor" to the death, the Commission considered: (1) Gerleman's rapid physical decline after the accident; (2) the medical evidence of a myocardial infarction at the time of, or shortly after, the accident; and (3) the hospitalization and "massive medical treatment" following the accident.

Appellants seek reversal of the award claiming that it was not supported by substantial and competent evidence and was contrary to the overwhelming weight of the evidence. In related points, appellants contend that pre-existing, cardiovascular conditions, rather than the vehicular collision, caused the death and that, where the evidence establishes that the cause of death was either the pre-existing conditions or the accident, an award to the claimant is contrary to law. We do not believe that this award of the Commission is vulnerable to any of these attacks.

From the evidence it could be determined that Mr. Gerleman's cardiovascular problems dated back to 1964 when hospital records showed he had suffered myocardial ischemia. In 1970 Gerleman experienced shortness of breath, chest pains due to coronary vascular insufficiency and blackouts. His enlarged heart and hypertension were discovered in 1973 and treatment began then for two cardiovascular diseases, hypertension and coronary artery disease. Gerleman's blood pressure when first checked on August 21, 1973, was 150/90 but reached 218/110 on April 9, 1976, only one month before the collision.

Gerleman was hospitalized in 1974 and in 1975, under Dr. Gandlmayr's care, for condi-

tions unrelated to his cardiovascular problems. During the 1974 hospitalization, x-rays revealed further cardiac enlargement, advancing coronary artery disease and bronchiectasis of the right lung. In September, 1975 he was hospitalized for several conditions including pulmonary emphysema. An electrocardiogram (EKG) taken during Gerleman's hospital stay indicated abnormal cardiac activity, but one of claimant's expert witnesses, Dr. Edward Massie, M.D., stated that the EKG interpretation in the hospital records was not entirely accurate. The abnormalities could be attributed to Gerleman's enlarged heart as well as to ischemia or to the effect of medication, digitalis. Dr. Massie testified that Gerleman's EKG immediately after the accident indicated for the first time a myocardial infarction.

In short, there is no dispute that Mr. Gerleman suffered from hypertension, cardio-hypertrophy and cardiovascular disease prior to the collision. Differences arise, however, as to the causal relationship, if any, between the collision and Mr. Gerleman's death some twenty-three days later. Dr. Gandlmayr testified that these conditions were being controlled by medication prior to the collision and that such a person could live "for a long time." In his opinion the collision "contributed to the demise of Mr. Gerleman." The witness reached the opinion, "... after treating a man for many years and seeing him many times, and treating him for hypertension and various other illnesses, that the serious accident of May the 17th led to a rapid downhill course and his death." Similarly, Dr. Massie testified "that the accident definitely had a significant contribution to the death of this patient." Dr. Massie also stated his opinion that the experience of a vehicular accident would cause the body of a person who had been injured therein to produce material called catecholamines which in turn heighten blood pressure and pulse rate and place extra strain on the heart. He viewed the accident as "a very important precipitating factor" in causing the death and stated that, although the death occurred later, "the deed was done at the time of the accident."

The medical testimony presented by appellants was to the effect that death was brought about by natural causes, i.e., the conditions from which all experts agreed Mr. Gerleman suffered prior to the accident. One of appellants' medical witnesses, Dr. John Davidson, M.D., characterized the decedent as "a good candidate for dropping dead" at any time, with or without the stimulus of an automobile accident. He agreed that such a stimulus would temporarily aggravate the existing conditions but such effects would be transitory, passing within a few minutes or, at the most, a few days.

Our function in reviewing a decision of the Labor and Industrial Relations Commission is limited to determining whether the award is supported by competent and substantial evidence on the whole record and is not against the overwhelming weight of the evidence. An award which meets those tests is affirmed. It is of no moment that a contrary result reached by the Commission would be permissible. See *Malcom v. La-Z-Boy Midwest Chair Co.*, 618 S.W.2d 725, 726–727 (Mo.App.1981). The fact that the Commission reached a decision contrary to that of the referee is likewise of no import, for we review only the decision of the Commission, "not that of the appeals referee, *Bishop v. L.I.R.C.*, 567 S.W.2d 736, 739 (Mo.App.1978) nor that of the circuit court, *First Bank of Commerce v. L.I.R.C.*, 612 S.W.2d 39, 42 (Mo.App.1981)." *Husky Corporation v. Labor and Industrial Relations Commission*, Nos. 44415 and 44431 (E.D., Mo.App., January 19, 1982).

In *Cowick v. Gibbs Beauty Supplies*, 430 S.W.2d 626 (Mo.App.1968), an employee died of a heart attack a short time after being involved in an automobile accident. It was shown that he suffered from a pre-existing heart condition and arteriosclerosis resulting in the narrowing of the openings through which blood reaches the heart. The court, nevertheless, upheld an award to his widow and dependent children, saying,

"If an accident results in aggravating or accelerating a pre-existing disease or con-

dition, it is compensable. *Mashburn v. Chevrolet-Kansas City Division*, 397 S.W.2d 23, 29 (Mo.App.). There is evidence here from which the Commission could have found that the accident activated the condition which caused death to occur at the time it happened; that it was an efficient, exciting, superinducing, concurring, or contributing cause of death. *Wilson v. Emery Bird Thayer Company*, 403 S.W.2d 953, 958 (Mo.App.)." Id. 630[5].

The testimony of claimant's expert witnesses, Drs. Gandlmayr and Massie, most certainly constitutes substantial and competent evidence that the accident was "an efficient, exciting, superinducing, concurring, or contributing cause of death." Although the testimony of medical experts presented by the employer and insurance carrier is indeed impressive, the decision of the Commission to reject their opinions that the vehicular collision played no part in Gerleman's death amounted to a determination on a factual issue which the Commission was authorized to make. See *Vogel v. Hall Implement Co.*, 551 S.W.2d 922, 927 (Mo.App.1977). Moreover, the rejected evidence does not rise to the status of "overwhelming" for the reason that all of the experts were in basic agreement on the fact that Mr. Gerleman was in precarious health prior to the collision and that the immediate cause of death was the sudden termination of heart function. They differed only on the rather narrow, if enormously important, issue of whether the collision contributed to the cause of death. In support of the acceptance of the claimant's expert testimony is the unquestioned evidence that, prior to the collision, the decedent led an active life and that immediately after the collision he plunged into a rapid physical decline which reached its nadir with his death twenty-three days later.

The award is supported by substantial and competent evidence, is not contrary to the overwhelming weight of the evidence, and is affirmed.

STEWART and CRIST, JJ., concur.