Douglas L. SMILEY,
Claimant-Respondent,

v.

FOREMOST–McKESSON,
Employer-Appellant.

No. 13971.

Missouri Court of Appeals,
Southern District,
Division One.

March 24, 1986.

Motion for Rehearing or to
Transfer to Supreme Court Denied
April 14, 1986.

William D. Powell, Springfield, for employer-appellant.

Richard D. Moore, West Plains, for claimant-respondent.

GREENE, Judge.

Foremost-McKesson (Foremost) appeals a decision of the Labor and Industrial Relations Commission of Missouri (Commission) which modified an award of an administrative law judge of the Division of Workmen's Compensation. The Commission found that Douglas L. Smiley was permanently and totally disabled as a result of

injuries sustained in an on-the-job accident, and awarded him benefits.

Assigned errors are that 1) the award of permanent total disability is against the weight of the evidence, 2) the finding of permanent total disability was erroneous because Smiley had refused to submit to surgery recommended by Foremost, which surgery would have cured or relieved Smiley of his disability, 3) the award of past medical expenses to Smiley was error because he had continued with medical treatment by certain doctors after being notified that Foremost would not pay for such treatment, and 4) in its determination of the amount due Smiley in accrued disability benefits, the Commission did not credit Foremost with the amount it had previously paid Smiley by reason of his disability.

Since there is nothing in the record to indicate that the Commission exceeded its powers in making the disputed award, or that the award was procured by fraud, our review is limited to determining whether the award is supported by competent and substantial evidence and is authorized by law. § 287.490.1, RSMo 1978, as amended. *Brooks v. General Motors Assembly Div.*, 527 S.W.2d 50, 52–53 (Mo.App.1975).

There was evidence before the Commission that on September 3, 1976, Smiley, a resident of Salem, Arkansas, was employed by Foremost as a route salesman. On that date, while loading milk cartons into his employer's truck, the truck suddenly rolled backwards, pinning Smiley against a loading ramp. Smiley sustained serious injuries to his back, pelvis and legs, including fractures of the pelvis and other bones, and serious injuries to his genitourinary tract, including a lacerated urethra, one of the consequences of which was impotence. Smiley filed a workmen's compensation claim pursuant to § 287.430, RSMo 1978, seeking compensation for his injuries. After Foremost filed its answer, a hearing was held before an administrative law judge of the Division of Workmen's Compensation.

The judge ruled that Smiley had suffered a compensable injury, rated his disability as 90% of the body as a whole, and that such disability was permanent. The award gave Smiley $28,800 for the permanent partial disability, $2,956.62 for past medical expenses, $1,540.20 as reimbursement for expenses incurred in travelling for medical examinations and treatments ("medical mileage"), and $95 a week for a 40-week healing period. It also ordered Foremost to furnish Smiley with such future medical aid "as may reasonably be required." The award credited Foremost with the sum of $11,240 previously paid Smiley as compensation.

Smiley and Foremost protested the award and requested review by the Labor and Industrial Relations Commission. Smiley contended he was totally and permanently disabled as a result of the accident. Foremost contended that 1) the preponderance of the evidence showed that Smiley's percentage of permanent disability was only 55% of the body as a whole, 2) Smiley was not entitled to medical benefits because he had refused medical treatment offered by Foremost "to cure and relieve from the effects of the injury," and 3) that the awards made to Smiley were against the weight of the evidence and were contrary to law.

After review, the Commission found that Smiley was permanently and totally disabled as a result of the accident, awarded him compensation for past due medical expenses, mileage expenses of $4,496.82, accrued permanent total disability in the amount of $33,535, plus $95 per week for life for future permanent disability payments, and ordered Foremost to pay his future medical expenses. The award allowed Smiley's attorneys a fee of $10,000, but made no mention of credits to be given Foremost for amounts previously paid to Smiley. The award affirmed the findings, conclusions, and award of the administrative law judge, with the exception of the modifications set out above.

Foremost then petitioned for judicial review. The Greene County Circuit Court, after reviewing the record and hearing argument from the parties, affirmed the deci-

sion of the Commission. This appeal followed.

■ Two of the four points relied on by Foremost in its appeal are inter-related. Foremost alleges that awarding Smiley a rating of permanent disability was error, because Smiley refused to submit to surgery to be performed by Dr. Gilbert Ross, a surgeon retained by Foremost, and that such surgery would have cured Smiley of his disability. In the related point, Foremost claims the award of past medical expenses was error because Smiley had continued treatment by his own doctors, after being informed that Foremost would not pay for such treatment because Smiley had refused the surgery recommended by Dr. Ross.

Section 287.140.4, RSMo 1978, provides that no compensation shall be paid for disability of an employee that was "caused, continued or aggravated by any unreasonable refusal [by the employee] to submit to any medical or surgical treatment or operation [proffered by the employer], the risk of which is, in the opinion of the division or the commission, inconsiderable in view of the seriousness of ·the injury." Whether the employee's refusal of medical treatment or surgery was reasonable is a question of fact. *Boatwright v. ACF Industries*, 463 S.W.2d 549, 554 (Mo.App.1971). We do not substitute our view of the facts for that of the Commission, and should not disturb its findings unless they are clearly against the overwhelming weight of the evidence. *Wray v. Schwitzer*, 615 S.W.2d 646, 648 (Mo.App.1981).

The Commission found that after the accident Smiley was taken to a hospital in Salem, Arkansas, where he was treated by Drs. Michael Moody and James Bozeman. While hospitalized there, Smiley developed bleeding in his urinary tract and was sent to the Regional Medical Center in Jonesboro, Arkansas, where Dr. Ladd Scriber, a board certified urologist, diagnosed that the cause of the bleeding was a urethral laceration resulting from the accident. Smiley later developed a dense urethral stricture at the site of the injury, which Dr.

Scriber attempted to surgically correct by bypassing the damaged portion of the urethra. Restricturing developed, which was partially resolved through a procedure called a modification urethroplasty, which involved inserting a bridging catheter through the stricture area. The procedure was performed by Dr. Bogaev, who was an associate of Scriber's. After Smiley complained of renewed obstruction, regular urethra dialations were commenced, which frequently caused urinary tract infection.

Foremost, who had previously approved Dr. Scriber as the treating physician, then requested that Smiley be examined by Dr. Gilbert Ross, a urologist at the University of Missouri Medical Center in Columbia, Missouri. After examination, Dr. Ross recommended that Smiley undergo urethroplasty surgery, during which a skin graft would be sewed into the urethra. Smiley refused this surgical procedure on the advice of his treating doctors, but did submit to further treatment by Dr. Scriber, consisting, in part, of a visual internal urethrotomy, which gave him some relief.

Based on these facts, the Commission found that Smiley's refusal of the surgery proposed by Dr. Ross was reasonable, pointing out that he had suffered a severe traumatic experience with numerous operations, medications, and hospitalizations, and, therefore, it was understandable and reasonable that Smiley would rely more heavily on the advice of his treating physicians than on that of a doctor he did not know. The burden was on Foremost to prove that Smiley's refusal was unreasonable. *Wood v. Wagner Electric Corporation*, 192 S.W.2d 579, 585–587 (Mo.App.), rev'd in part on other grounds, 355 Mo. 673, 197 S.W.2d 647 (banc 1946); *Boatwright v. ACF Industries*, supra, 463 S.W.2d at 554.

After considering the facts on this issue as found by the Commission, plus the fact that Dr. Ross thought it possible that Smiley's condition could worsen, rather than improve, after his recommended surgery and that he "guess[ed]" there was only a 50/50 chance the stricture would be cured as a result of the surgery he proposed, we hold the Commission's decision on this is-

sue is supported by substantial competent evidence, and is not contrary to the overwhelming weight of the evidence.

On the related issue of Foremost's liability for Smiley's past medical expenses, the Commission found that Drs. Moody, Bozeman, and Scriber, who were Smiley's treating physicians, had been selected by Foremost, and not by Smiley. Therefore, the Commission reasoned that Smiley's decision to follow their advice and treatment schedule was justified, since the only reason given by Foremost for discontinuing payment of Smiley's expenses incurred in consulting these treating physicians was his refusal to submit to surgery that they felt was ill-advised.

■ Although the employer has the right to select the treating physician, § 287.140.1, RSMo 1978, such right is not absolute, and may be waived. *Mashburn v. Chevrolet-Kansas City Div., G.M. Corp.*, 397 S.W.2d 23, 31 (Mo.App.1965). The right has been waived here. Foremost did not object, in any way, to Dr. Scriber or to his course of treatment of Smiley, until Dr. Ross suggested a radical form of surgery, which Scriber declined to perform. Foremost offered Smiley only two choices: submit to radical surgery, against the advice of his treating physician, or continue his conservative treatment at his own expense.

■ The law does not permit such inequity. Since Smiley's refusal to submit to the radical surgery was reasonable, it necessarily follows that Foremost is required to pay the medical bills for the more conservative treatment. *See Hendricks v. Motor Freight Corp.*, 570 S.W.2d 702, 709–10 (Mo.App.1978); *Schutz v. Great American Ins. Co.*, 231 Mo.App. 640, 103 S.W.2d 904, 910–11 (1937).

■ Foremost also contends that the Commission's award of permanent total disability is against the greater weight of the evidence.

A number of doctors and lay persons testified at the hearing and gave varying estimates as to the degree of Smiley's disability. Two doctors rated Smiley as permanently and totally disabled. Several lay witnesses, including Smiley, testified that the disabilities resulting from his injuries prevented his maintaining any normal employment. This testimony was competent substantial evidence that Smiley suffered permanent total disability as a result of the accident. *See Kowalski v. M–G Metals and Sales, Inc.*, 631 S.W.2d 919, 922 (Mo. App.1982).

■ Foremost's remaining point is that the Commission erred in not crediting to Foremost the sum of $11,240 that it had paid Smiley as compensation prior to the award of the Commission.

At the time of oral argument, Smiley's attorney admitted that such a credit was proper under the law. We so find.

The decision of the Commission is ordered modified, as so as to credit Foremost with the sum of $11,240, such amount representing the amount Foremost had paid Smiley as compensation prior to the Commission's decision. The Commission's decision is affirmed in all other respects.

So ordered.

TITUS, P.J., and FLANIGAN, J., concur.